## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

BANK OF AMERICA, N.A.,

       Plaintiff,

vs.                                                                     No. CIV 14-0319 JB/KBM

LAURENCE LISA LEBRETON; MORTGAGE
ELECTRONIC REGISTRATION SYSTEM,
INC., as Nominee for America's Wholesale
Lender; and FNU LNU, Unknown Tenant (Real
Name Unknown),

       Defendants.

## <u>MEMORANDUM OPINION</u>[1]

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion to Dismiss

Pursuant to NMRA 1-012(A) and Fed. R. Civ. P. 12(b)(6), filed April 25, 2014 (Doc. 4)

("MTD");[2] (ii) the Verified Motion for a More Definite Statement and Joinder, filed July 11,

2014 (Doc. 25)("Motion for More Definite Statement"); (iii) the Verified Motion to Strike

---

[1]The Court earlier entered orders, <u>see</u> Order, filed March 27, 2015 (Doc. 64); Order, filed March 27, 2015 (Doc. 65); Order, filed March 27, 2015 (Doc. 66); Order, filed March 27, 2015 (Doc. 67); Order, filed March 27, 2015 (Doc. 68), ruling on the Defendant's Motion to Dismiss Pursuant to NMRA 1-012(A) and Fed. R. Civ. P. 12(b)(6), filed April 25, 2014 (Doc. 4), the Verified Motion for a More Definite Statement and Joinder, filed July 11, 2014 (Doc. 25), the Verified Motion to Strike Defendants Motion to Dismiss Pursuant to NMRA 1-012(A) and Fed. R. Civ. P. 12(b)(6) with Memorandum of Objection, filed July 11, 2014 (Doc. 26), the Notice of Motion and Verified Motion to Strike Documents 28, 29, 30, 31 BANA's Opposition to Motion to Strike Et Al, Motion to Dismiss for Promissory Estoppel, Breach of Contract, Unclean Hands, Rule 7 Violations, Lack of First Hand Knowledge, filed August 11, 2014 (Doc. 32), and the Notice of Motion and Motion to Strike Request for Status Conference as Motion for Status Conference, filed August 22, 2014 (Doc. 34). In each of those Orders, the Court stated that it might "at a later date issue a memorandum opinion more fully detailing its rationale for this decision." Orders at 1 n.1. This Memorandum Opinion is the promised opinion.

[2]Although the Motion is titled "Defendant's Motion," Plaintiff Bank of America, N.A. filed it. The Motion's title is either a typographical error or a reference to the fact that Bank of America is moving to dismiss a claim against which it is defending.

Defendants [sic] Motion to Dismiss Pursuant to NMRA 1-012(A) and Fed. R. Civ. P. 12(b)(6) with Memorandum of Objection, filed July 11, 2014 (Doc. 26)("1st Motion to Strike"); (iv) the Notice of Motion and Verified Motion to Strike Documents 28, 29, 30, 31 BANA's Opposition to Motion to Strike Et Al, Motion to Dismiss for Promissory Estoppel, Breach of Contract, Unclean Hands, Rule 7 Violations, Lack of First Hand Knowledge, filed August 11, 2014 (Doc. 32)("2nd Motion to Strike"); and (v) the Notice of Motion and Motion to Strike Request for Status Conference as Motion for Status Conference, filed August 22, 2014 (Doc. 34)("3rd Motion to Strike").  The Court held a hearing on March 18, 2015.  The primary issues are: (i) whether the Court has original -- either federal-question or diversity -- jurisdiction over this case; (ii) whether, if the Court has original jurisdiction, Defendant Lisa Lebreton's noncompliance with three different removal rules -- the thirty-day limitation, the one-year limitation, and the forum-defendant rule -- deprives the Court of subject-matter jurisdiction; (iii) whether the Court should dismiss Lebreton's Counter Claim, filed April 3, 2014 (Doc. 1-2 at 8-14), where the Counter Claim was not alleged in one of the enumerated pleadings in rule 7(a) of the Federal Rules of Civil Procedure and appears to be composed of a patchwork of various judicial opinions; (iv) whether the Court should, under rule 12(e), order Plaintiff Bank of America, N.A. to provide a more definite statement of its MTD; (v) whether the Court should strike the MTD under rule 12(f); and (vi) whether the Court should set a status conference in this case.  As to the first issue, the Court doubts that it has original jurisdiction over this case, but those doubts are based on materials outside the record, and the Court will therefore give the parties an opportunity to make their case.  The Court will order the parties to adduce evidence establishing original jurisdiction within the next seven days or else it will remand the case to state court.  As to the second issue, assuming that the Court has original jurisdiction, Lebreton's

noncompliance with the three removal rules will not strip the Court of that jurisdiction.  The thirty-day limitation on removal, the one-year limitation on removal, and the forum-defendant rule are all procedural, and not jurisdictional.  As to the third issue, because the Counter Claim is improperly pled by federal standards, the Court will dismiss it without prejudice to Lebreton amending her Answer, No. D-101-CV-2012-00267 (N.M. Dist. Ct. July 18, 2012), to reassert the counterclaim at a later date.  The Court will thus grant the MTD.  As to the fourth issue, because motions for a more definite statement under rule 12(e) are properly directed at pleadings -- and not at motions like the MTD -- the Court will not require Bank of America to formulate the MTD into a more definite statement.   The Court will thus deny the Motion for More Definite Statement.  As to the fifth issue, because the Court interprets the word "pleading" in rule 12(f) as applying only to the documents enumerated in rule 7(a), the Court will not strike the MTD, which is a motion rather than a pleading.  The Court will thus deny the 1st Motion to Strike in full, the 2nd Motion to Strike in full, and the 3rd Motion to Strike in part.  As to the sixth issue, because the Court has broad discretion to manage its docket and because the Court finds status conferences helpful to it and the parties in achieving efficient, fair case resolution, the Court will schedule a status conference.  The Court thus grants the 3rd Motion to Strike in part.

## FACTUAL BACKGROUND

This case is a foreclosure action that mortgagee Bank of America has brought against mortgagor Lebreton.  The Court takes its facts from the Complaint for Foreclosure, filed April 3, 2014 (Doc. 1-1)("Complaint"), as it must at the motion-to-dismiss stage, see Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  (citing Moore v. Guthrie, 438 F.3d 1036,

1039 (10th Cir. 2006))).  On March 30, 2006, Lebreton executed and delivered to Countrywide Bank, N.A., an adjustable rate note in the principal sum of $378,400.00, bearing interest at the initial variable rate of 7.1250% (the "Note").  Complaint ¶ 5, at 2.[3]  As security for the Note, Lebreton mortgaged her property at 810 East Palace Avenue, Unit C, Santa Fe, New Mexico.  See Complaint ¶¶ 6, 9, at 2.  The Note contains a provision allowing for reasonable attorneys' fees should the mortgage need to be turned over to an attorney for debt collection.   See Complaint ¶ 11, at 3.  Countrywide Bank assigned the mortgage to Bank of America, successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing LP through an assignment of mortgage dated September 27, 2011, and recorded on October 11, 2011, as document number 1647618, in the records of Santa Fe County.  See Complaint ¶ 7, at 2.

Lebreton defaulted on the Note and, despite Bank of America's demands, has failed to cure the default.  See Complaint ¶ 10, at 3.  Bank of America exercised its option under the Note to accelerate the Note's outstanding balance, and all other amounts due and owing on the Note as of the date of default, and to foreclose the mortgage.  See Complaint ¶ 10, at 3.  As of January 13, 2012, Lebreton owes: (i) a principal balance of $387,200.26; plus (ii) interest accruing on said amount at variable rates from and including April 1, 2011, through and including January 13, 2012, in the amount of $10,552.10, and thereafter accruing at the current variable rate of 3.3750%; plus (iii) estimated late charges through January 13,2012, in the amount of $174.72; plus (iv) estimated escrow advances through January 13,2012, in the amount of $609.09; plus (v) all other attorneys' fees and other costs that Bank of America sustains in recovering its interests.  See Complaint ¶ 19, at 4-5.  Costs (i) through (iv) add up to a total of $398,536.17, and

---

[3]The Complaint's internal pagination is inconsistent with CM/ECF's.  The Court will cite to the Complaint's internal pagination -- the black number at the bottom center of the page, rather than the blue number at the top right of the page.

Bank of America additionally asserts that it has been required to employ counsel "to obtain real estate searches and reports on the premises and has incurred abstracting expenses and costs in this proceeding, all of which are additional indebtedness" that the mortgage secures.  Complaint ¶ 18, at 4.

Bank of America states that Defendant Mortgage Electronic Registration Services, Inc. "claims or may claim an interest in the property subject to this action pursuant to a Mortgage (Line of Credit) dated March 30, 2006, and recorded on March 31, 2006, as document number 1426683 and re-recorded on April 4, 2006, as document number 1427389, in the Santa Fe County Records," but that "[s]aid interest is subordinate and inferior to that of Plaintiff, and should be foreclosed herein."  Complaint ¶ 14, at 3-4.  It further states that, "[t]o the extent that any claim of interest or lien of any Defendants or other party is determined by the Court to be valid," all such claims are inferior and subordinate to Bank of America's lien and interest, and that Bank of America is entitled to have its mortgage lien determined to be a "first and prior" lien upon the property, superior to the rights of all others.  Complaint ¶ 16, at 4.

## PROCEDURAL BACKGROUND

Bank of American filed its Complaint in the First Judicial District Court, County of Santa Fe, State of New Mexico, on January 20, 2012.  See Complaint at 1.  It seeks a judgment against Lebreton for the principal amount due, plus interest at the variable rate of 3.3750% until all principal and interest are paid, plus such additional sums and amounts as Bank of America may have expended in payment for taxes and insurance, if any, and plus other costs and expenses that Bank of America has been required to pay concerning these proceedings, plus an amount to be ascertained by the Court for reasonable attorneys' fees, plus an amount sufficient to pay all costs of collection in accordance with the Note's provisions through the foreclosure sale date.  See

- 5 -

Complaint ¶ A, at 5.  It also requests that the Court foreclose its mortgage lien and sell the property, so that the proceeds can be applied to the payment of the judgment amount.  See Complaint ¶ B, at 5.  It further asks that the Court appoint: (i) a receiver to take possession of the property and manage it before the sale; and (ii) a special master to manage the sale itself.  See Complaint ¶¶ C-D, at 6.  Last, it asks for an "Order of Forcible Entry" and an order stating that Bank of America can, itself, be a purchaser at the special master's sale of the property. Complaint ¶¶ E-F, at 6.

For reasons that are not clear, there were two cases relating to this dispute in state court, Bank of America v. Lebreton, No. D-101-CV-201200267 (N.M. Dist. Ct. Jan. 20, 2012) (Thomson, J.), and Bank of America v. Lebreton, No. D-101-CV-201402175 (N.M. Dist. Ct. Oct. 1, 2014)(Thomson, J.), the latter of which was formally removed to federal court and the former of which was dismissed on April 6, 2015, which was three days after the first case's removal.  Lebreton defended both cases largely pro se and continues to proceed pro se in federal court.[4]  Over two years after Bank of America filed the suit, Lebreton filed her Counter Claim in state court[5] and, one day later, removed the case to federal court.  See Notice of Removal, filed

---

[4]It appears Lebreton retained at least three attorneys at various stages of the litigation in state court, but none of those relationships lasted.  She initially represented herself in federal court, but retained counsel on March 27, 2015 -- after the filing, briefing, and hearing on all motions now before the Court.  See Entry of Appearance, filed March 27, 2015 (Doc. 63).

[5]Lebreton filed the Counter Claim in the case that was not formally removed to federal court.  The order dismissing that case, however, issued three days after the other case's removal and indicated that the dismissal was "pursuant to rule 1-041(E)(2) and removal."  Bank of America v. Lebreton, No. D-101-CV-201200267 (Apr. 6, 2015).  That rule provides:

> Unless a pretrial scheduling order has been entered pursuant to Rule 1-016 NMRA, the court on its own motion or upon the motion of a party may dismiss without prejudice the action or any counterclaim, cross-claim or third party claim if the party filing the action or asserting the claim has failed to take any significant action in connection with the action or claim within the previous one

April 3, 2014 (Doc. 1).  The Counter Claim is seven pages long, and appears to be a judicial

opinion -- or an amalgam of several judicial opinions[6] -- which Lebreton copied and pasted into a

word processing program, and to which she then made various alterations.  The Counter Claim is

written in a manner consistent with the New Mexico state courts' format and contains such clues

to its source material as its opening line, "THIS MATTER comes before the Court," and its

closing paragraph declaring that "[w]e reverse the holding of the Court of Appeals and the grant

of summary judgment by the district court . . . [and w]e remand to the district court for further

proceedings consistent with this opinion."  Counter Claim at 14.  The Counter Claim contains

scattered references to the parties this case, as well as myriad references to "parties" who are not

parties in the present case.

---

> hundred and eighty (180) days.  A copy of the order of dismissal shall be
> forthwith mailed by the court to all parties of record in the case.  Within thirty
> (30) days after service of the order of dismissal, any party may move for
> reinstatement of the case.  Upon good cause shown, the court shall reinstate the
> case and shall enter a pretrial scheduling order pursuant to Rule 1-016 NMRA.
> At least twice during each calendar year, the court shall review all actions
> governed by this paragraph.

N.M. R. Civ. P. 1-041E(2).  Referring to this rule in the order of dismissal suggests that the
dismissed case is "dead," while referring to the other case's removal suggests that the two cases
were collapsed -- substantively if not formally -- for transfer to federal court.  It is thus not clear
whether documents filed and issues raised in the dismissed case -- most notably Lebreton's
Counter Claim -- are properly before the Court.  Both Bank of American and Lebreton appear to
be operating under the assumption, however, that the Counter Claim is a live claim in the case
now before the Court.  Because the Court will dismiss the Counter Claim if it is live, the Court
will accept the parties' assumption, as well.

    [6]After much searching on Westlaw, the Court has determined that at least one source
document for the Counter Claim is Bank of New York v. Romero, 2014-NMSC-007, 320 P.3d 1
(N.M. 2014).  Paragraphs 25 through 32 of the Counter Claim contain excerpts that are identical
to the portion of the opinion spanning from the second half of ¶ 39 to its conclusion.

The parties have filed several motions in this case. The Court will summarize the briefing for each of them,[7] the hearing on the motions, and a letter that Bank of America sent to the Court after the hearing relating to certain jurisdictional issues.

1.     **The MTD.**

Bank of America moves to dismiss Lebreton's Counter Claim under rule 12(b)(6). See MTD at 5. It characterized the Counter Claim as "indecipherable and nonsensical," MTD at 1, "rambling, improper, and legally meritless," MTD at 2, "largely incoherent," MTD at 2, "improperly plead[ed]," MTD at 3, "non-responsive," MTD at 3, and "lack[ing] clarity," MTD at 5. It also argues that the Counter Claim is "patently untimely," because it was filed over two years after the suit's initiation and nearly two years after Lebreton filed her Answer. MTD at 6. Last, it contends that the statute of limitations -- which it says sets forth a limitations period "ranging from three (3) through six (6) years" -- bars Lebreton's claims. MTD at 12.

Lebreton responded to the MTD with a document less coherent than the Counter Claim. See Memorandum of Objection, filed May 23, 2014 (Doc. 9)("Response"). The following excerpt is illustrative:

> 6.     In simple babble English: does tu plus two equal fore or can a motion-responsive pleading and reply occur in 13 days when 14 days are required for each party to move-respond-reply adding to an accumulated value 14+14+14 = 42 days for a briefing to be complete. BOA did not notify lisa or communicate with lisa a Motion to Dismiss thereby BOA acted in bad faith by filing a Motion to Dismiss without proper Notice to lisa.

---

[7]Lebreton also filed a Petition for Peremptory Challenge to Excuse, filed May 30, 2014 (Doc. 12), seeking to have her case reassigned to another United States District Judge in the District of New Mexico. This document was not designated a motion, so the Court will not treat it as such, but, to the extent that it makes a request, that request is denied. Unlike the New Mexico state-court system, see N.M. R. Civ. P. 1-088.1C, the federal court system does not contain a feature allowing parties to peremptorily challenge their randomly assigned judge. The federal statute to which Lebreton cites, 28 U.S.C. § 1870, refers to peremptory challenges of jurors, and not of judges.

> 7.     Maxim of law: Although the court may believe it can make water run uphill of its own accord, impossibilities exist.

Response ¶¶ 6-7, at 2 (misspellings in original).  The entire Response reads this way.  Probably the closest it comes to setting forth a comprehensible legal argument is when it asserts that "BOA provides the court no factual standing to move the court for a motion to dismiss," Response ¶ 18, at 3, although even this assertion comes on the heels of the statement that "[u]nder Lieber code Article 31 and 38 Article 55 of the Hague the occupying army must protect lisa," Response ¶ 17, at 3.  Lebreton attaches a copy of her Counter Claim to the back of the document.

**2.     The Motion for More Definite Statement.**

Lebreton filed the Motion for More Definite Statement on July 11, 2014.  After a bit of a windup, Lebreton makes the following requests:

> 5.     lisa hereby this Motion for a more definite statement and Motion to Strike moves the court because BANA's Motion to Dismiss provides no reference to applicable Federal Rules and Citations nor does the Motion by BANA provide a comprehensible foundation to support the Motion to Dismiss because the Motion violates Rule 7 and other rules as referenced above.

> 6.     For this Motion with Claim by lisa For Verified 1st Amended Counter-Claim, Claim, and Complaint as supporting Points and Authorities supporting this Motion by lisa.

> 7.     lisa requests BANA provide in detail, with affirmation under penalty of pe1jury how they come to make claims against lisa, the estate, the property and provide with valid evidence their proof of claim because the Motion to Dismiss provides no such lawful authority nor does it address the points made by the Counter-Claim and suppo1ting 1st Amended Counter-Claim.

> 8.     lisa requests under the aforementioned rule that BANA prove how they gave money, value and consideration to file a Motion to Dismiss lisa's Counter-Claim.

> 9.     Should BANA not provide proof for their claim, lisa asks the Comi look no further than the multiple and different Notes filed into the previous

proceedings to show material evidence for the Comi not Dismiss but instead Order BANA to provide a more definite statement with facts not hearsay as provided in what lisa alleges is an incomprehensible Motion to Dismiss.

10.     lisa also requests BANA provide the actual original wet ink Note under camera along with live witness testimony as to the facts supporting said original Note.

11.     Under the Rule For this Motion With Claim by lisa For the Court to Move with Action by the Court against BANA, lisa asks the Court and BANA for a complete, verifiable chain of title connecting BANA to lisa.

12.     lisa includes 1-11 above as fully incorporated herein for this motion with rules by the Court and prays the Court finds in favor for lisa and Order BANA provide a more definite statement to include evidence for BANA's lawful standing to file Motions in this Court including pursuant to the Rule the detailed requests made herein by lisa.

Motion for More Definite Statement ¶¶ 5-12, at 2-3.

Bank of America filed a four-page Opposition to Verified Motion for a More Definite Statement and Joinder, filed July 28, 2014 (Doc. 29)("Opposition").  In this document, Bank of America argues that a motion for more definite statement cannot be directed at the MTD, because the MTD is not a pleading, but, rather, a motion.  See Opposition at 2-3.

### 3.     The 1st Motion to Strike.

Lebreton filed her 1st Motion to Strike on July 11, 2014.  Perhaps in retaliation for the aspersions that Bank of America cast on her draftsmanship in fashioning the Counter Claim, Lebreton attacks Bank of America's MTD as "incomprehensible," "defective," "without merit," filled with "nonsense" and "incomprehensible grammar that has no facts or structure," and "rambl[ing] on and on with incomprehensible references."  MTD at 1; id. ¶ 4, at 2; id. ¶ 10, at 3. In an attack that is almost certainly a tit-for-tat against Bank of America's accusations that she copied and pasted a collage of judicial opinions together to make her Counter Claim, Lebreton notes that Bank of America's counsel in this case tends to cite many of the same authorities in its

clients' other cases, provocatively asking: "Could it be [that] BANA's attorney cuts and pastes many words, citations, and other letters that have no bearing on the counter-claims made by lisa?"  1st Motion to Strike ¶ 8, at 3.

The bulk of the 1st Motion to Strike appears to be Lebreton working out her frustrations with Bank of America's counsel, and the Court cannot discern exactly what relief she seeks -- beyond striking the MTD -- and what wrong that relief would rectify.  To the extent that there is a legal argument, it appears to be that the MTD is incomprehensibly written and that the Court should strike it for its failure to put Lebreton on notice of its intent.  See, e.g., 1st Motion to Strike ¶ 10, at 3 ("Lisa cannot discern from the grammar if BANA intended to say everything with improper syntax and grammar without any facts or just creating more incomprehensible words in an attempt to create confusion.").

Bank of America responded with a ten-page Opposition to Motion to Strike Motion to Dismiss, filed July 28, 2014 (Doc. 28), in which it interprets the 1st Motion to Strike as "challenging the [Mortgage Electronic Registration Systems, Inc. ('MERS')] assignment":

> It also appears that Counterclaimant attempts to assert a new cause of action in her Motion.  More specifically, she asserts that MERS did not have the authority to assign the Mortgage.  However, this improperly-raised claim fails in its entirety because Counterclaimant lacks standing to challenge the assignment and in any event, Counterclaimant expressly granted MERS the authority to assign the Mortgage.

> 1.     Counterclaimant Lacks Standing To Challenge The Assignment.

> Counterclaimant's objections about the validity of the assignment of the Mortgage fail at the outset because she lacks standing to challenge the assignment.

> This issue has been addressed by the New Mexico Court of Appeals and by the Bankruptcy Court for the District of New Mexico, and both have rejected claims concerning MERS' authority to assign mortgages, where the mortgage expressly grants MERS that right.  See In re Kaye Elizabeth Sandford, 2012 WL 6012785, *5 ("In short, the current case law overwhelmingly rejects the argument

that MERS lacks authority to assign its interest in a mortgage."); <u>Bridge v. Aames Cap. Corp.</u>, 2010 WL 3834059, *3 (N.D. Ohio, Sept. 29, 2010)(same); <u>Kapila v. Atlantic Mortgage & Investment Corp.</u>, 184 F.3d 1335, 1338 (11th Cir. 1999)(same).

Further, in <u>In re MERS</u>, a recent and significant multi-district litigation, the District Court of Arizona held that third-party borrowers lack standing to challenge the validity of assignments of their mortgages. 2011 WL 4550189 at *5. The court reasoned that "[e]ven if an assignment were voidable, an action to declare an assignment void could only be brought by someone who can demonstrate a concrete and particularized injury in fact that is fairly traceable to the challenged assignment." <u>Id.</u> The court held that the "[p]laintiffs, as third-party borrowers, are uninvolved and unaffected by the alleged Assignments, and do not possess standing to assert a claim based on such." <u>Id.</u>

In reaching its conclusion, the court cited Bridge, supra, for the proposition that, although a "[b]orrower certainly has an interest in avoiding foreclosure . . . the validity of the assignments does not affect whether Borrower owes its obligations, but only to whom Borrower is obligated. . . ." (emphasis added). <u>In re MERS</u>, 2011 WL 4550189 at * 5 (emphasis added). Similarly, the court in <u>Bridge</u> stated "[w]hether Plaintiff is challenging the 'transfer' of the Mortgage or challenging 'various transactions engaged in' or related to the Mortgage, her role in the exchange between [the defendant financial institutions] and how it affects her contractual obligations remains the same - uninvolved and unaffected." <u>Bridge</u>, 2010 WL 3834059 at *4 (citing <u>Kapila</u>, 184 F.3d at 1338).

Here, as in <u>In re MERS</u> and <u>Bridge</u>, Counterclaimant challenges the validity of the Mortgage assignment between two financial institutions - a transaction to which she was not a party. As in those cases, because she was not involved in the assignment transaction, she cannot demonstrate a concrete and particularized injury in fact that is fairly traceable to such assignment. <u>See In re MERS</u>, 2011 WL 4550189 at *5. The sale of a loan and the validity of the assignment of the Mortgage have no effect on whether Counterclaimant owes obligations under the Note and Mortgage. Rather, such transactions may only affect to whom she is obligated. <u>See Bridge</u>, 2010 WL 3834059, *3.

As a result, Counterclaimant lacks standing to attack MERS' assignment of the Mortgage, and this claim, though raised improperly in her Motion to Strike, cannot save her counterclaims regardless and the Motion to Dismiss should be granted.

      2.     <u>Counterclaimant Cannot Challenge The Assignment Because The Mortgage Expressly Grants MERS The Authority To Assign It</u>.

Counterclaimant's assertion that MERS lacked the ability to assign her Mortgage.  further [sic] fails as a matter of law because she expressly granted

MERS the authority to act "as a nominee for Lender and Lender's successors and assigns." Mortgage at 1.  Moreover, she expressly granted MERS the authority to assign the Mortgage and to pursue foreclosure in the event of default. Mortgage at 3. ("Borrower understands and agrees that MERS . . . has the right to exercise any or all of those interests including but not limited to the right to foreclose."). Accordingly, her improperly-raised challenge to MERS' authority is legally deficient and must be dismissed.

This issue was addressed by the Bankruptcy Court for the District of New Mexico, and it rejected claims concerning MERS' authority to assign mortgages, where the mortgage expressly grants MERS that right.  See In re Kaye Elizabeth Sandford, 2012 WL 6012785, *5 (Bkrtcy. D.N.M. 2012)("In short, the current case law overwhelmingly rejects the argument that MERS lacks authority to assign its interest in a mortgage.").

Here, Counterclaimant agreed that MERS "and its assigns" could enforce the note by foreclosing the mortgage. Mortgage at 2 ("MERS . . . is acting solely for . . . Lender and Lender's successors and assigns"), p. 4 ("MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property"). Indeed, not only did Counterclaimant expressly agree in writing to MERS' authority to assign the Mortgage, the Mortgage itself states that MERS "is the mortgagee under this Security Instrument."  Id. at 2. The Mortgage further provides: "[f]or this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successor's and assigns) and to the successor and assigns of MERS [the subject Property]."  Id. at 3 (emphasis added).  Further, Counterclaimant agreed when she executed the Mortgage that she "understands and agrees that MERS holds . . . legal title to the interests granted by Borrower in this Security Instrument . . . ." Id. at 3.

Given that she expressly granted to MERS' the very authority in question, Counterclaimant cannot now plausibly claim that MERS lacked such authority. Accordingly, not only should the claims be dismissed because it is improper to raise claims in a Motion to Strike as FRCP 13 requires that a pleading must state as a counterclaim any claim that the party has against the opposing party, but Counterclaimant also fails to explain how these assertions even apply to BANA. In any event, they fail to state a valid claim because MERS had authority to assign the Mortgage.  As a result, this claim must be dismissed.

Opposition to Motion to Strike Motion to Dismiss at 5-8.  Bank of America also states:

It appears that Counterclaimant is also attempting to bring in new parties through the filing of this "Motion to Strike."  This is improper because the federal rules require that any claim raised be contained in a pleading (FRCP 13) and any amended pleading must be brought within 21 days after serving the original pleading, by party's consent, or with leave of court (FRCP 15).

- 13 -

Opposition to Motion to Strike Motion to Dismiss at 8 n.5.

4. **The 2nd Motion to Strike.**

The 2nd Motion to Strike advances a wealth of different legal theories, including promissory estoppel, breach of contract, unclean hands, rule 7 violations, and lack of firsthand knowledge. See 2nd Motion to Strike at 1. Probably the most significant contribution that the 2nd Motion to Strike makes is in giving the following explanation for the distinctive form, grammar, et cetera of Lebreton's motions:

(a) lisa, the executrix speaks and writes fluent French, the original language for much of the law(s) presented by BANA.

(b) French law -language, speaks and is written with correct conjugated nouns, verbs, adverbs etc.

(c) The pleadings, motions and other documents and papers filed by BANA both in State Court and now in Federal Court are for the most part incomprehensible.

(d) Attorneys for BANA misrepresent the facts because mostly all or all of the sentence structure comes without a noun as fact before the verb moving the fact with a verified object as the point they are attempting to make. For example: For this motion-to-strike, with cause-authorities-statements-verified-under-penalty-of-perjury by lisa, and for this court with competency by the judges-oaths-duties-and-obligations, lisa now has access to this herein entitled court-for-the-record. [Lebreton dropped a footnote here, which states the following: "NOTICE: this sentence adheres to correct syntax, parse grammar, and for its structure, with correct conjugation provides a clear statement for the facts presented within the sentence."]

(e) lisa has upon information and knowledge that constitutes what any reasonable mind may conclude, BANA provides incomprehensible paperwork that the court should strike and deny.

2nd Motion to Strike ¶ 1(a)-(e). The Court takes these passages to mean that Lebreton is a native French speaker, and is perhaps unfamiliar with the English language and American writing customs.

- 14 -

Lebreton divides her 2nd Motion to Strike into three sections.  First, she argues that the Bank of America attorneys "are acting as witness' [sic] without first hand knowledge."  2nd Motion to Strike ¶¶ 10-14, at 3-4.  The basis for this argument is not clear, and Lebreton seems to use the term "lacking a firsthand basis" to convey the argument that (i) Bank of America is legally wrong in its positions; and (ii) it must, therefore, lack firsthand basis, because if a firsthand basis existed, then its legal position would be correct.  See 2nd Motion to Strike ¶¶ 10-14, at 3-4.  Second, Lebreton argues that the MTD violates rule 7 -- presumably of the United States District Court for the District of New Mexico's Local Rules of Civil Procedure -- because Bank of America failed to seek her consent to the MTD before filing it.  See 2nd Motion to Strike ¶¶ 15-22, at 4-5.  She attaches a page from what she asserts to be called a "Guide for Pro Se Litigants" to her 2nd Motion to Strike, which describes a meet-and-confer requirement.  See 2nd Motion to Strike at 13.  She also quotes a section from this attachment that refers to the prohibition against ex parte communications between judges, and attorneys or parties; it is not clear whether she is accusing anyone of violating this prohibition, but she quotes it nonetheless.  See Motion to Strike ¶ 18, at 4.  Third, Lebreton includes a "discussion" section, which makes a number of rather unfocused arguments, including that Bank of America's failure to include her as a counter-plaintiff in the case caption of one of her documents renders its MTD untenable, that Bank of America cannot "somehow . . . place words of a document and expect those words to provide grounds for a Motion to Dismiss," and that "the hearsay typed is incomprehensible sentences do not provide a complete story and may be construed to have no meaning in any language that lisa can find."  2nd Motion to Strike ¶¶ 3-5, at 6-7.  Bank of America did not respond to the 2nd Motion to Strike.

5.      **The 3rd Motion to Strike.**

On August 22, 2014, Lebreton filed her 3rd Motion to Strike.  This document is a single

page, and, rather than trying to paraphrase, the Court will quote everything after the caption:

> **COMES NOW** Defendant by through and with this above captioned case
> with the above entitled court now moves this court strike doc. 33 by Bank of
> America, N.A. and quash the request as moot.
>
> **DECLARATION AND SUPPORTING AUTHORITIES.**
>
> 1.      Filed concurrently as now fully stated herein, is a NOTICE OF
> WRIT IN THE FORM OF AN AFFIDAVIT, and VERIFIED STATUS REPORT
> IN LIEU OF STATUS CONFERENCE WITH No. 1: 14-CV-00319 AGAINST
> BANA ET AL-DEFENDANTS INCLUDING BANK OF AMERICA Plaintiff,
> and LAURENCE LISA LEBRETON, et al Defendant, and 21 DAY NOTICE TO
> OBJECT.
>
> **Conclusion.**
>
> Defendant Prays the court move to strike doc. 33 and find for Defendant
> against Plaintiff and other relief the court deems fair.

3rd Motion to Strike at 1.  Bank of American did not respond to the 3rd Motion to Strike.

6.      **The Hearing on the Motions.**

The Court held a hearing on the MTD, the Motion for More Definite Statement, the 1st

Motion to Strike, the 2nd Motion to Strike, and the 3rd Motion to Strike on March 18, 2015.  See

Transcript of Hearing (taken Mar. 18, 2015)("Tr.").[8]  The Court first asked the parties about the

removal.  Lebreton removed the case after it had been in state court for over two years -- well

beyond the normal thirty-day limitation -- and she is a New Mexico citizen -- and thus the

forum-defendant rule would normally bar her from removing the case.  See Tr. at 3:17-4:8

(Court, Bousliman); 28 U.S.C. § 1441(b)(2) (setting forth the forum-defendant rule);

---

[8]The Court's citations to the transcript of the hearing refer to the court reporter's original,
unedited version.  Any final version may contain slightly different page and/or line numbers.

§ 1446(b)(1), (2)(B), (2)(3) (setting for the thirty-day rule).  Bank of America stated that these issues deprive Lebreton of her right to remove the case, but that, although it had the right to remand the case, it had not filed a motion for remand, because it wanted to stay in federal court. See Tr. at 3:22-4:8 (Bousliman).  The Court asked whether Bank of America could waive these issues -- i.e., if they are procedural or jurisdictional -- and it stated that it was not sure, but it believed them to be procedural.  See Tr. at 4:9-22 (Court, Bousliman).

The Court then addressed the MTD.  Bank of America argued that there were numerous procedural defects in the way that Lebreton filed her Counter Claim, including that she failed to seek leave from the Court and that it was untimely.  See Tr. at 9:22-10:21 (Bousliman, Court). Bank of America argued that Lebreton's Counter Claim is a compulsory counterclaim and that she must therefore raise it at the time she files her Answer.  See Tr. at 10:22-11:14 (Bousliman, Court).  Bank of America also noted that the Counter Claim is its own separate document and not a component of a pleading, as Bank of America contends that the rules require.  See Tr. at 12:11-21 (Court, Bousliman).

The Court then discussed the MTD with Lebreton, "put[ting] out a proposal to dismiss, to grant this motion, but do it without prejudice to . . . you filing a motion for leave to amend . . . . you[r] answer to bring a contract claim."  Tr. at 14:2-6 (Court).  Lebreton said that she "appreciate[d] very much [the] suggestion" and that she would "consult with . . . legal representation."  Tr. at 14:14-16 (Lebreton).  The Court asked her if she had anything else to say on the MTD, and she said that she did not.  See Tr. at 14:17-19 (Court, Lebreton).  The Court then went through Lebreton's four motions -- which the Court and Bank of America agreed the grant of the MTD largely mooted -- and Bank of America said little in opposition to them, while Lebreton said nothing in support of them.  See Tr. at 16:9-24:3 (Court, Bousliman, Lebreton).

The Court indicated that it would deny each of Lebreton's motions, and Lebreton indicated her assent to each ruling. See Tr. at 16:9-24.3 (Court, Bousliman, Lebreton).

### 7. Bank of America Letter on Removal-Jurisdiction Issues.

After the hearing, Bank of America sent an unsolicited letter to the Court attempting to answer some of the questions the Court had presented to it regarding possible defects in the Court's removal jurisdiction. See Letter from Jason Bousliman to the Court, filed April 15, 2015 (dated Apr. 15, 2015)(Doc. 70)("Letter"). The Letter contends that the three removal-specific rules which Lebreton violated when she removed this case -- the thirty-day limitation, the one-year limitation, and the forum-defendant rule -- are all procedural, rather than jurisdictional. See Letter at 2. The Letter states:

> In response to your request concerning whether a party can waive the timeliness of a removal to federal court, case law demonstrates that seeking remand is procedural and therefore, waivable. Specifically, under 28 U.S.C. § 1446(a), a party must remove a case from a state court to a federal court must, within 30 days after receipt of the complaint. Furthermore, under 28 U.S.C. § 1447(c), a party seeking remand must do so within 30 days of the removal under section 1446 (a). However, the 30 day time period is procedural in nature. As this court recently noted, "this means that procedural defects must be raised within 30 days after the filing of the notice of removal or they are waived . . . ." Roybal v. City of Albuquerque, No. CIV 13-0025 KG/KBM, 2014 BL 130084, at *1 (D.N.M. May 7, 2014). Therefore, failing to object to an untimely removal within thirty (30) days waives the defense of untimeliness.
>
> Regarding our discussion of whether jurisdiction is waivable, it appears that this is a matter of first impression in this district. However, several United States district courts and circuit courts have held that the "forum defendant rule" raised in 28 U.S.C. § 1441 (b)(2) is also considered procedural and waivable. Exxon Chern. Fire v. Berry, 558 F.3d 378 (5th Cir. 2009). In the instant matter, the original dispute was between completely diverse parties and the amount in controversy requirement is met, therefore this court can exercise original jurisdiction. "The invocation of the removal machinery by a citizen in the forum state, while error, is not a jurisdictional defect." Id. The defects in the removal procedure should be considered waived.

Letter at 2-3 (citations omitted).

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that,

if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(citations omitted).

Although affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions where: (i) the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss, see Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009); Robbins v. Oklahoma, 519 F.3d 1242 (10th Cir. 2008)); and (ii) where the facts establishing the affirmative defense are apparent on the face of the complaint, see Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim.  If the defense appears plainly on the face of the complaint itself,

the motion may be disposed of under this rule."). The defense of limitations is the affirmative defense most likely to be established by the uncontroverted facts in the complaint. See 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure: Civil § 1277 (3d ed. 2014). If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6). See Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.). The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute; the Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion. Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, it is incumbent upon the plaintiff to plead, either in the complaint or in amendments to it, facts establishing an exception to the affirmative defense). It appears, from case law in several circuits, that the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by simply refraining from pleading specific or identifiable dates, see Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006); Harris v. New York, 186 F.3d 243, 251 (2d Cir. 1999); Honeycutt v. Mitchell, No. CIV 08-0140 W, 2008 WL 3833472 (W.D. Okla. Aug. 15, 2008)(West, J.), although the Tenth Circuit has not squarely addressed this practice.

## LAW REGARDING MOTIONS TO STRIKE UNDER RULE 12(f)

Rule 12(f) of the Federal Rules of Civil Procedures provides:

**(f)**   **Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

  **(1)**   on its own; or

  **(2)**   on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f).  Professors Charles Wright and Arthur Miller have recognized, however, that such motions are not favored and, generally, should be denied:

The district court possesses considerable discretion in disposing of a Rule 12(f) motion to strike redundant, impertinent, immaterial, or scandalous matter. However, because federal judges have made it clear, in numerous opinions they have rendered in many substantive contexts, that Rule 12(f) motions to strike on any of these grounds are not favored, often being considered purely cosmetic or "time wasters," there appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.  Any doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party.

5C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure § 1382, at 433-36 (3d. ed. 2004)(footnotes omitted). Accord Burget v. Capital W. Sec., Inc., No. CIV 09-1015-M, 2009 WL 4807619, at *1 (W.D. Okla. Dec. 8, 2009)(Miles-LaGrange, C.J.)(citing Scherer v. U.S. Dep't of Educ., 78 F. App'x 687, 689 (10th Cir. 2003)(unpublished))("While motions to strike are generally disfavored, the decision to grant a motion to strike is within the discretion of the court.").

"Allegations will not be stricken as immaterial under this rule unless they have no possible bearing on the controversy."  Estate of Gonzales v. AAA Life Ins. Co., No. CIV 11-0486

- 22 -

JB/WDS, 2012 WL 1684599, at *5 (D.N.M. May 8, 2012)(Browning, J.)(quoting Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc., No. CIV 09-0455 CVE/FHM, 2010 WL 132414, at *5 (N.D. Okla. Jan. 8, 2010)).   "The Court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed."   Friends of Santa Fe Cnty. v. LAC Minerals, Inc., 892 F. Supp. 1333, 1343 (D.N.M. 1995)(Hansen, J.)(quoting Carter-Wallace, Inc. v. Riverton Lab., Inc., 47 F.R.D. 366, 368 (S.D.N.Y. 1969))(internal quotation marks omitted).   Professors Wright and Miller have also commented on what constitutes "immaterial" matter in the context of a motion to strike.   "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material."   5C Wright & Miller, supra, § 1382, at 458-60 (footnotes omitted).   Scandalous allegations are those that degrade a party's moral character, contain repulsive language, or detract from the court's dignity.   See Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc., 173 F.R.D. 275, 285 (D. Colo. 1997).

"Only material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly.   Motions, briefs, . . . memoranda, objections, or affidavits may not be attacked by the motion to strike."   Dubrovin v. Ball Corp. Consol. Welfare Ben. Plan for Emps., No. CIV 08-0563 WYD/KMT, 2009 WL 5210498, at *1 (D. Colo. Dec. 23, 2009).   Accord Ysais v. N.M. Judicial Standard Comm'n, 616 F.Supp.2d 1176, 1184 (D.N.M. 2009)(Browning, J.)(citing Searcy v. Soc. Sec. Admin., 956 F.2d 278, 1992 WL 43490, at *1, *4 (10th Cir. 1998)(unpublished table decision))("Generally . . . motions, briefs, and memoranda may not be attacked by a motion to strike.").   "The Federal Rules of Civil

Procedure define 'pleadings' as a complaint or third-party complaint; an answer to a complaint, a third-party complaint, a counterclaim, or a crossclaim; and, 'if the court orders one, a reply to an answer.'"   Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d at 1184 (quoting Fed. R. Civ. P. 7(a)).

"Striking a pleading or part of a pleading is a drastic remedy and because a motion to strike may often be made as a dilatory tactic, motions to strike under Rule 12(f) generally are disfavored."   Estate of Gonzales v. AAA Life Ins. Co., 2012 WL 1684599, at *5 (quoting Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc., No. CIV 09-0455 CVE/FHM, 2010 WL 132414, at *5 (N.D. Okla. Jan. 8, 2010)(Egan, J.))(internal quotation marks omitted)). "The exception to this principle is that a Court may 'choose to strike a filing that is not allowed by local rule, such as a surreply filed without leave of court.'"   Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d at 1184 (citing In re Hopkins, 162 F.3d 1173, 1998 WL 704710, at *3 n. 6 (10th Cir. 1998)(unpublished table decision)).

For example, in Skyline Potato, Co., Inc. v. Hi-Land Potato, Co ., Inc., No. CIV 10-698, 2012 WL 6846386 (D.N.M. Dec. 31, 2012)(Browning, J.), the Court denied a motion to strike a letter filed with the Court, because the letter was not a pleading, and did not pertain to either party's legal defenses or arguments -- the letter expressed one party's position regarding whether the Court should rule on summary judgment motions pending at the close of a bench trial.  See 2012 WL 6846386, at *6.  Similarly, in Great American Insurance Co. v. Crabtree, No. CIV 11-1129 JB/KMB, 2012 WL 3656500 (D.N.M. Aug. 23, 2012)(Browning, J.), the Court denied a plaintiff's motion to strike exhibits attached to the defendant's motion to dismiss, because they were neither pleadings nor irrelevant.  See 2012 WL 3656500, at *18.  In Applied Capital, Inc. v. Gibson, the Court refused the plaintiff's request to strike a motion to dismiss because rule 12(f)

applies only to pleadings, and not to a motion to dismiss.  See 2007 WL 5685131, at *18.  In Estate of Anderson v. Denny's, Inc., No. CIV 12-0605 JB/GBW, 2013 WL 690809 (D.N.M. Feb. 7, 2013)(Browning, J.), the Court denied the plaintiff's request to strike a notice of completion of briefing for similar reasons.  See 2013 WL 690809, at *12.

## LAW REGARDING MOTIONS FOR A MORE DEFINITE STATEMENT UNDER RULE 12(e)

Rule 12(e) of the Federal Rules of Civil Procedure permits a party to file a motion for a more definite statement when that party is required to file a response to a pleading, but the pleading is so vague or ambiguous that a response cannot reasonably be expected to be framed. See Moya v. Schollenbarger, 465 F.3d 444, 446 n.2 (10th Cir. 2006)("If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading.").  A motion for more definite statement may only be made before filing a responsive pleading and not after.  See Fed. R. Civ. P. 12(e).  The federal courts disfavor motions for a more definite statement in light of the liberal discovery provided under the federal rules, and grant such motions only when the complaint is so vague or ambiguous that a defendant cannot reasonably determine the issues requiring a response.   See Peterson v. Brownlee, 314 F. Supp. 2d 1150, 1155 (D. Kan. 2004); Shaffer v. Eden, 209 F.R.D. 460, 464 (D. Kan. 2002).  A motion for a more definite statement is used to provide a remedy only for an unintelligible pleading, rather than to correct inaccurate assertions, add precision, or flesh out a lack of detail.  See Coffey v. McKinley Cnty., No. CIV 09-0028, 2009 WL 3208209, at *2 (D.N.M. Sept. 11, 2009)(Browning, J.); Bannister v. Coronado Fin., Inc., No. CIV 07-620, 2008 WL 2323518, at *10 (D.N.M. Jan. 17, 2008)(Browning, J.); Frazier v. Se. Penn. Transp. Auth., 868 F. Supp. 757, 763 (E.D. Pa. 1994).  The Supreme Court of the United States has held that,

"[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).

## LAW REGARDING REMOVAL, REMAND, FRAUDULENT JOINDER, PROCEDURAL MISJOINDER, AND BAD FAITH

If a civil action filed in state court satisfies the requirements for original federal jurisdiction -- meaning, most commonly, federal-question or diversity jurisdiction -- the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). See Huffman v. Saul Holdings LP, 194 F.3d 1072, 1076 (10th Cir. 1999)("When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court . . . .")(quoting Caterpillar Inc. v. Lewis, 519 U.S. at 68). In a case with multiple defendants, there must be unanimous consent to removal; any one defendant may spoil removal and keep the case in state court. See 28 U.S.C. § 1446(b)(2)(A). Only true defendants have removal rights: plaintiffs defending counterclaims and third-party defendants may not remove an action,[9] and their consent

---

[9]This view is well-established with regard to plaintiffs defending counterclaims, but is an open question in the Tenth Circuit with regard to third-party plaintiffs. The better view, and the majority view, however, is that "defendants" as used in the removal statute refers to true defendants and not to third-party defendants. As the Court wrote in Wiatt v. State Farm Insurance Co., 560 F. Supp. 2d 1068 (D.N.M. 2007)(Browning, J.),

> [w]ith respect to third-party defendants, courts take various views on whether they may remove cases. See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d 1237, 1239 (D. Colo. 2006)(citing Monmouth-Ocean Collection Serv., Inc. v. Klor, 46 F. Supp. 2d 385 (D.N.J. 1999)). 28 U.S.C. § 1441(a) permits the removal of a civil action of which the district courts of the United States have original jurisdiction "by the defendant or the defendants." The majority view is that third-party defendants are not "defendants" within the meaning of § 1441(a). See First Nat. Bank of Pulaski v. Curry, 301 F.3d 456, 461-62 (6th Cir. 2002);

James Wm. Moore, <u>Moore's Federal Practice</u> § 107.11[1][b][iv] ("[T]hird-party defendants are not *defendants* within the meaning of the removal statute." (emphasis in original)).  Other justifications for opposing third-party defendant removal are that it would force a plaintiff to litigate in a federal court that he did not choose and to which his adversary originally could not have removed, and that allowing removal would expand jurisdiction of federal courts in contravention of the strictly construed statutory limits on the right to removal.  <u>See</u> NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1239.  Proponents of third-party removal, however, assert that the term "defendant" under § 1441(a) does not necessarily exclude third-party defendants, who, like other defendants, have been brought into court involuntarily and may have an interest in having a federal forum.

. . . .

Sister districts within the United States Court of Appeals for the Tenth Circuit have routinely held that third-party defendants that a defendant/third-party plaintiff impleads may not remove cases.  <u>See</u> NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1239-40; <u>Menninger Clinic Inc. v. Schilly</u>, No. CIV 92-4104, 1992 WL 373927, at *1-2 (D. Kan. Nov. 23, 1992); <u>Radio Shack Franchise Dep't v. Williams</u>, 804 F. Supp. at 152-53; <u>Elkhart Co-op Equity Exch. v. Day</u>, 716 F. Supp. 1384, 1385, 1387 (D. Kan. 1989)(cross-claim).  These cases, however, involved the application of 28 U.S.C. § 1441(c) and not a plaintiff/counter-defendant impleading the third-party defendant under Rule 14(b).  Arguably, some of the rationales for opposing third-party defendant removal may not apply where the plaintiff impleads a third-party defendant, because the plaintiff is the party permissively joining the third-party defendant, and in this scenario, the third-party defendant is more like a traditional defendant -- a party antagonistic to the plaintiff.  <u>See</u> Moore, <u>supra</u>, § 107.11 [1][b][iv] ("The better view . . . is that third-party claims are not removable, because only a party defending against claims asserted by a plaintiff ought to be able to remove.").  At least one court, however, has held that a third-party defendant a plaintiff/counter-defendant impleads cannot remove, because the third-party defendant is not a defendant within the meaning of § 1441.  <u>See</u> <u>Garnas v. Am. Farm Equip. Co.</u>, 502 F. Supp. 349, 351 n.7 (D.N.D. 1980)(based on pre-1990 amendment to section 1441(c)).

The Tenth Circuit has not spoken definitively on the propriety of third-party removal.  <u>See</u> NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1240.  It is therefore an open question in this circuit whether a third-party defendant, who the plaintiff impleaded, may remove a case.

560 F. Supp. 2d at 1076 (citations omitted).  The Court ultimately concluded that it "need not resolve this issue, because assuming, without deciding, that a third-party defendant impleaded under rule 14(b) may attempt removal, Allstate has not met its burden to establish the Court's diversity jurisdiction over the claims against it."  560 F. Supp. 2d at 1078.

is not required for removal if all the true defendants consent.  See Hamilton v. Aetna Life & Cas. Co., 5 F.3d 642 (2d Cir. 1993); Wiatt v. State Farm Ins. Co., 560 F. Supp. 2d 1068 (D.N.M. 2007)(Browning, J.).

To remove a case based on diversity, the diverse defendant must demonstrate that all of the usual prerequisites of diversity jurisdiction are satisfied.  Under 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00.  See 28 U.S.C. § 1332(a); Johnson v. Rodrigues, 226 F.3d 1103, 1107 (10th Cir. 2000).  Diversity between the parties must be complete.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68; Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004).  In addition to the requirements of original jurisdiction, § 1441(b)(2) lays out the "forum-defendant rule," which provides that a case may not be removed on the basis of diversity jurisdiction if any defendant is a citizen of the state in which the state-court action was brought.  Brazell v. Waite, 525 F. App'x 878, 884 (10th Cir. 2013)(unpublished)[10]("[W]e note that § 1441(b)(2) -- the so-called forum-defendant

---

[10]Brazell v. White is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that Brazell v. White, Oklahoma Farm Bureau Mutual Insurance Co. v. JSSJ Corp., 149 F. App'x 775 (10th Cir. 2005)(unpublished), Nerad v. AstraZeneca Pharmaceuticals, Inc., 203 F. App'x 911 (10th Cir. 2006)(unpublished), Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592 (10th Cir. 2000)(unpublished), and Hornsby v. Evans, 328 F. App'x 587 (10th Cir. 2009)

rule -- provides as a separate requirement that '[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" (alteration in original)(quoting 28 U.S.C. § 1441(b)(2))).   The forum-defendant rule applies only to cases removed under diversity jurisdiction; a defendant may remove a case brought against it in its home state on the basis of federal-question jurisdiction.   See 28 U.S.C. § 1441(b).   Last, a case cannot be removed if it began with a nondiverse party or forum-citizen defendant and only later came to satisfy the requirements of removal jurisdiction, unless: (i) the plaintiff voluntarily dismissed the removal-spoiling party, see DeBry v. Transamerica Corp., 601 F.2d 480, 488 (10th Cir. 1979); Flores-Duenas v. Briones, No. CIV 0660 JB/CG, 2013 WL 6503537, at *12 n.6, *26 (D.N.M. Dec. 1, 2013)(Browning, J.)(describing the operation of the "voluntary-involuntary rule);[11] or (ii) the removal-spoiling party was fraudulently joined or procedurally misjoined -- doctrines described below.

      1.    **The Presumption Against Removal.**

      Federal courts are courts of limited jurisdiction; thus, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome.   See Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995); Fajen v. Found. Reserve Ins. Co., 683 F.2d at

(unpublished), all have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion.

[11]The Tenth Circuit explained:

> The general effect of the [voluntary-involuntary] test is that a cause cannot be removed where the removability is a result of some development other than a voluntary act of plaintiff.   The cause cannot be removed as a result of evidence from the defendant or the result of a court order rendered on the merits of the case.

DeBry v. Transamerica Corp., 601 F.2d at 488 (citation omitted).

333; Martin v. Franklin Capital Corp., 251 F.3d at 1290; Bonadeo v. Lujan, No. CIV 08-0812 JB/ACT, 2009 WL 1324119, at *4 (D.N.M. Apr. 30, 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.").  The defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence."  McPhail v. Deere & Co., 529 F.3d at 953 (10th Cir. 2008).  See Bonadeo v. Lujan, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").  Because federal courts are courts of limited jurisdiction, the Tenth Circuit has ruled that "courts must deny such jurisdiction if not affirmatively apparent on the record."  Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished).  On the other hand, this strict construction and presumption against removal should not be interpreted as a hostility toward removal cases in the federal courts.  See McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *2 (D.N.M. Feb. 9, 2010)(Browning, J.)(citing Bonadeo v. Lujan, 2009 WL 1324119, at *12 ("Strict construction does not mean judicial hostility toward removal.  Congress provided for removal, and courts should not create rules that are at tension with the statute's language in the name of strict construction.")).

"It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals."  Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1095 (10th Cir. 2005)(citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)).  "All doubts are to be resolved against removal."  Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982).  "The

burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).

> ## 2.    The Procedural Requirements of Removal.

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed." Thompson v. Intel Corp., 2012 WL 3860748, at *5.  A removal that does not comply with the express statutory requirements is defective, and the Court must, upon request, remand the case to state court.  See Huffman v. Saul Holdings LP, 194 F.3d at 1077.  See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) of Title 28 of the United States Code provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  Such notice of removal is proper if filed within thirty-days from the date when the case qualifies for federal jurisdiction.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b).  The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction is available.  Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998).   The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial

pleading indicates that the right to remove may exist." Akin v. Ashland Chem. Co., 156 F.3d at 1036.[12]

After the notice of removal is filed, all state-court proceedings are automatically stayed, and the other defendants in the case -- if not all defendants joined in the removal -- have thirty days to consent to the removal of the action. See 28 U.S.C. § 1446(b)(2). "When a civil action is removed solely under section 1441(a) [the standard removal statute, which excludes multiparty, multiforum jurisdiction], all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). The failure of all defendants to consent to removal will result in remand. The rule of unanimity applies to all defendants, whether they are required parties under rule 19 or merely proper parties under rule 20. Defendants who have not been served, however, need not join in removal. See Kiro v. Moore, 229 F.R.D. 228, 230-32 (D.N.M. 2005)(Browning, J.).

Section 1447(c) permits the district court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court of the United States has stated:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005). The Tenth Circuit has limited district courts' discretion to impose costs and fees to those cases in which the removal was

---

[12]Congress clarified removal jurisdiction and procedures in the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758. See Thompson v. Intel Corp., No. CIV 12-0620 JB/LFG, 2012 WL 3860748, at *12 n.5 (D.N.M. Aug. 27, 2012)(Browning, J.)(discussing the Act).

objectively unreasonable.  See Garret v. Cook, 652 F.3d 1249, 1254 (10th Cir. 2011)("[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.").

### 3.    Fraudulent Joinder.

A defendant may remove a case to federal court based upon diversity jurisdiction in the absence of complete diversity if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction.  See Am. Nat'l Bank & Trust Co. v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991); Hernandez v. Menlo Logistics, Inc., No. CIV 12-0907 JB/WPL, 2013 WL 5934411, at 14-17 (D.N.M. Sept. 30, 2013)(Browning, J.).   A defendant may remove on the basis of fraudulent joinder either while the nondiverse party is still joined or after it is dismissed from the case -- the doctrine can thus function as an exception to either complete diversity or the voluntary-involuntary rule.  "'[A] fraudulent joinder analysis [is] a jurisdictional inquiry,'" Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1214 (quoting Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1247 (10th Cir. 2004)), and, thus, the Tenth Circuit instructs that the district court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available," Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964)(citations omitted).  "A district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent." Baeza v. Tibbetts, No. CIV 06-0407 MV/WPL, 2006 WL 2863486, at *3 (D.N.M. July 7, 2006)(Vazquez, J.).   The Supreme Court has stated: "Merely to traverse the allegations upon which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith."  Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146,

152 (1914).  The Tenth Circuit has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive."   Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006)(unpublished).

The party asserting fraudulent joinder bears the burden of proof.  See Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000)(unpublished)("The case law places a heavy burden on the party asserting fraudulent joinder.").   "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty."   Couch v. Astec Indus., Inc., 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999)(Baldock, J.).   Before 2013, the most recent published Tenth Circuit decision to state the burden of proof for demonstrating fraudulent joinder was issued over forty years earlier in Smoot v. Chicago, Rock Island & Pacific Railroad Co., 378 F.2d 879 (10th Cir. 1967).  The Tenth Circuit said that fraudulent joinder must be "established with complete certainty upon undisputed evidence."   Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882.

Actual fraud -- e.g., a plaintiff colluding with a nondiverse defendant to defeat removal[13] -- suffices to establish fraudulent joinder, but it is not required.  See McLeod v. Cities

---

[13]Collusion might look something like this: a plaintiff names a nondiverse defendant under a highly dubious theory of liability; the plaintiff contacts the defendant and offers to dismiss the case at the end of the one-year limitation, see 28 U.S.C. § 1446(c), if the defendant agrees not to move to dismiss before the one-year mark; and the defendant agrees to the arrangement to save litigation costs, as well as to avoid any slim chance that the court decides to recognize the plaintiff's theory of liability against it.

Serv. Gas Co., 233 F.2d 242, 246 (10th Cir. 1956)("[C]ollusion in joining a resident defendant for the sole purpose of preventing removal . . . may be shown by any means available."). In Smoot v. Chicago, Rock Island & Pacific Railroad Co., the Tenth Circuit stated two other bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is a patent sham"; or (ii) "though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists." Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882 (quoting Dodd v. Fawcett Pubs., Inc., 329 F.2d 82, 85 (10th Cir. 1964)). In Smoot v. Chicago, Rock Island & Pacific Railroad Co., the Tenth Circuit found fraudulent joinder because the joined party's non-liability was "established with complete certainty upon undisputed evidence." 378 F.2d at 882. "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882. In Smoot v. Chicago, Rock Island & Pacific Railroad Co., the plaintiff died when his car collided with a freight train. See 378 F.2d at 881. The plaintiff's estate sued the railroad company and joined a non-diverse alleged employee as a defendant. See 378 F.2d at 881. It was undisputed that the diversity-destroying party's employment with the railroad company had "terminated almost fifteen months before the collision and that he was in no way connected with the acts of negligence ascribed to him." 378 F.2d at 881.

In recent unpublished decisions, the Tenth Circuit has adopted different articulations of the burden of proof for fraudulent joinder, two of which are from the United States Court of Appeals for the Fifth Circuit. In Montano v. Allstate Indemnity Co., the Tenth Circuit quoted favorably Hart v. Bayer Corp., 199 F.3d 239 (5th Cir. 2000), which states:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a

cause of action against [the joined party], in state court.  In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party.  We are then to determine whether that party has any possibility of recovering against the party whose joinder is questioned.

Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *4-5 (alteration in original)(quoting Hart v. Bayer Corp., 199 F.3d at 246)(internal quotation marks omitted).  The Tenth Circuit stated that the standard for proving fraudulent joinder "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced."  Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *2.  The Tenth Circuit in Montano v. Allstate Indemnity Co. also quoted from Batoff v. State Farm Insurance Co., 977 F.2d 848 (3d Cir. 1992), which states: "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."  Batoff v. State Farm Ins. Co., 977 F.2d at 853.

In Nerad v. AstraZeneca Pharmaceuticals, Inc., the Tenth Circuit adopted a different articulation of the burden of proof.  The Tenth Circuit stated that, where fraudulent joinder is asserted, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant."  203 F. App'x at 913 (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393 (5th Cir. 2000)).  The Tenth Circuit explained that "[a] 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law."  203 F. App'x at 913.

- 36 -

The Fifth Circuit recognized the inconsistencies in various articulations of the standard for fraudulent joinder and directly addressed the problem in Travis v. Irby, 326 F.3d 644 (5th Cir. 2003):

> Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard.   The test has been stated by this court in various terms, even within the same opinion.   For example, the Griggs [v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999),] opinion states,
>
>> To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.
>
> 181 F.3d at 699 (emphasis added)(citing Burden v. Gen. Dynamics Corp., 60 F.3d 213, 317 (5th Cir. 1995)).   The Griggs opinion later restates that test as follows -- "Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court."   181 F.3d at 699 (emphasis added).   Similarly, in summing up federal law, Moore's Federal Practice states at one point: "To establish fraudulent joinder, a party must demonstrate . . . the *absence of any possibility* that the opposing party has stated a claim under state law."   16 Moore's Federal Practice § 107.14[2][c][iv][A] (emphasis added).   It then comments: "The ultimate question is whether there is arguably a *reasonable basis* for predicting that state law might impose liability on the facts involved."   Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

326 F.3d at 647 (emphases  in original).   The Fifth Circuit has settled upon this phrasing:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004)("To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.").

In Zufelt v. Isuzu Motors America, LCC, 727 F. Supp. 2d 1117, 1124 (D.N.M. 2009)(Browning, J.), the Court addressed the standard that courts should use when addressing fraudulent joinder and concluded that, to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined. 727 F. Supp. 2d at 1124-25 (citing Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *4-5). The Court explained:

> [T]his District has consistently adopted the "possibility" standard when assessing fraudulent joinder claims. See Allen v. Allstate Ins. Co., No. CIV 08-0733, 2008 WL 6045497 (D.N.M. Oct. 31, 2008)(Browning, J.)(holding that the claims asserted against the non-diverse defendant were "possibly viable under New Mexico law, and . . . sufficient to preclude federal jurisdiction"); Baeza v. Tibbetts, 2006 U.S. Dist. LEXIS 95317, at *11, 2006 WL 2863486 (stating that "[r]emand is required if any one of the claims against [the defendant] is possibly viable"); Provencio v. Mendez, No. CIV 05-623, 2005 U.S. Dist. LEXIS 39012, at *25, 2005 WL 3662957 (D.N.M. Sept. 29, 2005)(Browning, J.)(stating that "there must be no possibility the [p]laintiffs have a claim against [the non-diverse defendant]"); Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (stating that, to defeat removal jurisdiction, "[t]he plaintiff need only demonstrate the possibility of the right to relief"). This Court, in Couch v. Astec Indus., Inc., noted with approval the language of the United States Court of Appeals for the Eleventh Circuit, which states that "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998))(emphasis in original).

Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1229.

In Brazell v. Waite, the Tenth Circuit stated that the "removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant," but it did not further elaborate on that burden. 2013 WL 2398893, at *3 (citing Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964); Roe v. Gen. Am. Life Ins. Co., 712 F.2d 450, 452 n.* (10th Cir. 1983)).

- 38 -

In 2013, the Tenth Circuit published its first opinion since 1946 regarding the burden of proof for demonstrating fraudulent joinder: "'To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013)(Briscoe, C.J., joined by Seymour & Bacharach, J.J.)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)). In Dutcher v. Matheson, the Tenth Circuit reviewed a district court's holding that it had diversity jurisdiction over a case where Utah citizens sued ReconTrust, a Texas-based national bank, Stuart T. Matheson, a Utah citizen, and Matheson's law firm. See Dutcher v. Matheson, 733 F.3d at 983, 987. The plaintiffs alleged that Matheson and his law firm enabled ReconTrust to conduct an illegal nonjudicial foreclosure by holding the foreclosure sales on behalf of the Texas-based bank. See 733 F.3d at 983. The defendants removed the case to federal court and alleged that the plaintiffs fraudulently joined the Utah defendants. See 733 F.3d at 983. The district court agreed, finding that, under Utah law, "an attorney cannot be held liable to a non-client absent fraud, collusion or privity of contract." 733 F.3d at 988. The Tenth Circuit disagreed with that characterization of Utah law, finding instead that, in the case on which the defendants relied, the Utah Supreme Court "has simply limited the circumstances in which a lawyer owes a duty of care to non-clients from actions arising out of the provision of legal services." 733 F.3d at 988. In rejecting the claim of fraudulent joinder, the Tenth Circuit said

> that does not mean that the plaintiffs have stated a valid claim against Matheson and his law firm. Or even that Matheson and his law firm are not somehow fraudulently joined. But the defendants needed to clear a high hurdle to prove something they have yet to prove, i.e., fraudulent joinder.

733 F.3d at 989.

The Tenth Circuit did not elaborate on the defendant's burden to show fraudulent joinder, except to say that it is "a high hurdle." 733 F.3d at 989. It quoted, however, Cuevas v. BAC Home Loans Servicing, LP, a Fifth Circuit opinion that repeats the clarified standard from the Smallwood v. Illinois Central Railroad Co. case. See Dutcher v. Matheson, 733 F.3d at 988 (10th Cir. 2013)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)).

> Under the second way, the test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." [Smallwood v. Ill. Cent. R.R. Co., 385 F.3d at 573.] If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of *all* defendants. There is no improper joinder if the defendants' showing compels the same result for the resident and nonresident defendants, because this simply means that the plaintiff's case is ill founded as to all of the defendants. Such a defense is more properly an attack on the merits of the claim, rather than an inquiry into the propriety of the joinder of the in-state defendant.

Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249 (emphasis in original)(citations omitted)(internal quotation marks omitted). Based on the Tenth Circuit's history of relying on Fifth Circuit analysis in fraudulent joinder cases, the Tenth Circuit would likely approve this additional explanation of the fraudulent joinder standard. Accordingly, the Court will use the following standard for fraudulent joinder: whether the defendant has demonstrated that there is no possibility that the plaintiff will recover against an in-state defendant. Cf. Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1124-25 (concluding that fraudulent joinder occurs when "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined). No case sets forth the burden of proof that applies to (much rarer) allegations of actual fraud, such as plaintiff-defendant collusion, see note 13, supra,

at 34, and accompanying text, but the Court concludes that the clear-and-convincing standard -- the usual standard for fraud -- is appropriate, see, e.g., United States v. Thompson, 279 F.2d 165, 167 (10th Cir. 1960)("An allegation of fraud is a serious matter; it is never presumed and must be proved by clear and convincing evidence." (citations omitted)).

An unresolved question is whether fraudulent joinder permits the removal of actions that have been pending in state court for over a year.  Section 1446(c)(1) provides: "A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action . . . ."  28 U.S.C. § 1446(c)(1).  The two district court cases from the Tenth Circuit to address the issue both concluded that it does not, but those opinions were issued before Congress amended § 1446 in 2012 to add the remainder (the omitted portion) of the sentence quoted earlier in this paragraph: "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).  See Chidester v. Kaz, Inc., No. CIV 08-0776 TCK/PJC, 2009 WL 2588866, at *3 (N.D. Okla. Aug. 19, 2009)(Kern, J.); Caudill v. Ford Motor Co., 271 F. Supp. 2d 1324, 1327 (N.D. Okla. 2003)(Eagan, J.).  Outside the Tenth Circuit, the Courts of Appeals have said little, and district courts appear more-or-less evenly split on the issue, with some holding that a case can be removed on the basis of fraudulent joinder after the one-year mark, see Hardy v. Ajax Magnathermic Corp., 122 F. Supp. 2d 757, 759 (W.D. Ky. 2000); Johnson v. Heublein, Inc., 982 F. Supp. 438, 444-45 (S.D. Miss. 1997); Barnett v. Sylacauga Autoplex, 973 F. Supp. 1358, 1367 (N.D. Ala. 1997); Leslie v. BancTec Serv. Corp., 928 F. Supp. 341, 346 (S.D.N.Y. 1996); Morrison v. Nat'l Ben. Life Ins. Co., 889 F. Supp. 945, 950-51 (S.D. Miss. 1995); Saunders v. Wire Rope Corp., 777 F. Supp. 1281, 1282-83 (E.D. Va. 1991); Greer v. Skilcraft, 704 F. Supp. 1570, 1582-83 (N.D. Ala. 1989), and others concluding that the fraudulent-joinder

doctrine bows to the one-year limitation, see Ariel Land Owners, Inc. v. Dring, 245 F. Supp. 2d 589, 600-02 (M.D. Pa. 2003); Codner v. Am. Home Prods. Corp., 123 F. Supp. 2d 1272, 1274 (W.D. Okla. 2000); Hattaway v. Engelhard Corp., 998 F. Supp. 1479, 1481-82 (M.D. Ga. 1998); Russaw v. Voyager Life Ins. Co., 921 F. Supp. 723, 724-25 (M.D. Ala. 1996); Zumas v. Owens-Corning Fiberglas Corp., 907 F. Supp. 131, 133-34 (D. Md. 1995); Price v. Messer, 872 F. Supp. 317 (S.D. W. Va. 1995); Norman v. Sundance Spas, Inc., 844 F. Supp. 355, 356-57 (W.D. Ky. 1994); Santiago v. Barre Nat'l, Inc., 795 F. Supp. 508, 510-12 (D. Mass. 1992); Brock v. Syntex Labs., Inc., 791 F. Supp. 721, 722-23 (E.D. Tenn. 1992); Cofer v. Horsehead Research & Dev. Co., 805 F. Supp. 541, 543-44 (E.D. Tenn. 1991); O'Rourke v. Communique Telecomms., Inc., 715 F. Supp. 828, 829 (E.D. Mich. 1989).  Again, however, all of these cases came before the addition of 28 U.S.C. § 1446(c)(1), which grafted a bad-faith exception to the one-year limitation, discussed at length later in this opinion.  The Court concludes that the addition of the bad-faith exception to the one-year limitation clarifies that the one-year limitation is procedural, rather than jurisdictional, and, thus, extends the applicability of fraudulent-joinder doctrine past the one-year mark.  Thus, defendants may remove a case on fraudulent-joinder grounds even after it has been pending in state court for more than one year.

Another unresolved question regarding fraudulent joinder is whether it creates an exception to the forum-defendant rule -- which provides that even an action with complete diversity cannot be removed if any defendant is a citizen of the forum state -- in addition to creating an exception to the rule of complete diversity.  See 28 U.S.C. § 1441(b)(2).  Courts and commentators recite fraudulent joinder as involving the legally unjustifiable naming of a nondiverse party, a party who defeats complete diversity, or a diversity-spoiling party, but no case addresses whether the doctrine extends to the wrongful naming of a diverse party whose

inclusion in the lawsuit nonetheless defeats removal because of the party's status as a citizen of the forum state.  See Brazell v. Waite, 525 F. App'x at 884 & n.3 (implying, but not holding or stating clearly, that fraudulent joinder is an exception to the forum-defendant rule, and noting an "apparent lack of ruling from any federal appellate court, and [a] split among district courts, on the issue" (citing Morris v. Nuzzo, 718 F.3d 660, 666 (7th Cir. 2013))); Hernandez v. Cooper Tire & Rubber Co., No. CIV 12-1399 JWL, 2013 WL 141648, at *2 n.2 (D. Kan. Jan. 11, 2013)("Some courts have extended the fraudulent joinder doctrine to diverse, in-state defendants in light of the forum defendant rule . . . ."  (citing Morris v. Mid-Century Ins. Co., No. CIV 12-0578 SEB/DML, 2012 WL 3683540, at *5 (S.D. Ind. Aug. 24, 2012), vacated and remanded sub nom. Morris v. Nuzzo, 718 F.3d 660)).  Although the policy justifications behind fraudulent-joinder doctrine would seem to apply just as strongly to the forum-defendant rule as they do to complete diversity, there is an important legal distinction between the two requirements: complete diversity is a requirement of original subject-matter jurisdiction and is found in § 1332; the forum-defendant rule is unique to removal jurisdiction -- it does not apply to cases filed in federal court in the first instance -- and is found in § 1441.  See 28 U.S.C. §§ 1332(a), 1441(b)(2).  Fraudulent joinder, however, only ever applies in the removal context, and does no work in cases filed in federal court in the first instance.  As such, the Court sees no principled reason to limit fraudulent-joinder doctrine's application to the joining of nondiverse parties to defeat complete diversity, while excluding the functionally identical practice of fraudulently joining forum-citizen defendants to defeat the forum-defendant rule.  The Court, therefore, construes fraudulent-joinder doctrine as permitting removal whenever a plaintiff fraudulently joins a party that defeats removal jurisdiction, whether that defeat comes by way of complete diversity or the forum-defendant rule.

A district court's order to remand based on a finding of fraudulent joinder is not reviewable by the Tenth Circuit.  See Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913 (holding that, because the district court remanded based on its conclusion that it lacked subject-matter jurisdiction at the time of removal, 28 U.S.C. § 1447(d) precluded the Tenth Circuit from reviewing the order).  The fraudulent joinder inquiry on a motion to remand is a subject-matter jurisdiction inquiry.  See Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d at 1247.

### 4.    Procedural Misjoinder.[14]

Rule 20 of the Federal Rules of Civil Procedure provides:

**(a)    Persons Who May Join or Be Joined.**

> **(1)    Plaintiffs.**  Persons may join in one action as plaintiffs if:
>
> > **(A)**    they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> >
> > **(B)**    any question of law or fact common to all plaintiffs will arise in the action.
>
> **(2)    Defendants.**  Persons -- as well as a vessel, cargo, or other property subject to admiralty process in rem -- may be joined in one action as defendants if:

---

[14]The Court refers to the doctrine as "procedural misjoinder," rather than "fraudulent misjoinder," because of the confusion that the word "fraudulent" has caused in the fraudulent joinder context.  As the Honorable Martha A. Vasquez, then-Chief District Judge for the United States District Court for the District of New Mexico, once explained: "Fraudulent joinder is a term of art.  It does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant."  Baeza v. Tibbetts, No. CIV 06-0407 MV/WPL, 2006 WL 2863486, at *1 n.1 (D.N.M. July 7, 2006)(Vasquez, J.).  The Court will refer to the doctrine as "procedural misjoinder" to avoid expanding that confusion.  Flores-Duenas v. Briones, 2013 WL 6503537, at *22 n.8.

> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> **(B)** any question of law or fact common to all defendants will arise in the action.
>
> **(3)    Extent of Relief.** Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

Fed. R. Civ. P. 20(a).

"Procedural misjoinder," also known as "fraudulent misjoinder," is a recent development that is related to fraudulent joinder, but distinct from it. As Professor E. Farish Percy of the University of Mississippi School of Law has explained:

> Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a non-diverse or in-state defendant even though the plaintiff has no reasonable procedural basis to join such defendants in one action. While the traditional fraudulent joinder doctrine inquires into the substantive factual or legal basis for the plaintiff's claim against the jurisdictional spoiler, the fraudulent misjoinder doctrine inquires into the procedural basis for the plaintiff's joinder of the spoiler. Most state joinder rules are modeled after the federal joinder rule that authorizes permissive joinder of parties when the claims brought by or against them arise "out of the same transaction, occurrence, or series of transactions or occurrences" and give rise to a common question of law or fact. Thus, in a case where the joined claims are totally unrelated, a federal district court may find removal jurisdiction pursuant to the fraudulent misjoinder doctrine even though the plaintiff has a reasonable substantive basis for the claim against the jurisdictional spoiler.

E. Farish Percy, Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine, 29 Harv. J.L. & Pub. Pol'y 569, 572 (2006)(footnotes omitted).

The Eleventh Circuit formulated the doctrine in Tapscott v. MS Dealer Service Corp., and explained its purpose as follows:

>Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action.  A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."  Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921).

Tapscott v. MS Dealer Serv. Corp., 77 F.3d at 1360 (footnote omitted).

The facts of Tapscott v. MS Dealer Service Corp. illustrate the doctrine's operation.  The case involved two putative state law class actions, joined together in a single case: (i) a class action in which an Alabama resident alleged that four defendants, including an Alabama resident, had violated various provisions of Alabama fraud and consumer-protection law in connection with the "sale of 'service contracts' on automobiles sold and financed in Alabama," 77 F.3d at 1355; and (ii) a class action in which Alabama alleged three defendants, including Lowe's Home Centers, a North Carolina resident, had violated Alabama consumer-protection law in connection with the sale of retail product, see 77 F.3d at 1355.  The second class action named Lowe's Home Centers as "the putative defendant class representative for a 'merchant' class."  77 F.3d at 1355.  This unified case matched particular plaintiffs "with particular defendants against whom they allege individual claims"; as relevant here, the only two class representatives for the class action were Alabama residents, and they asserted claims only against Lowe's Home Centers.  77 F.3d at 1359-60.

The district court concluded that there was no allegation of joint liability or conspiracy, and that the claims involved in the car-sales class action were "wholly distinct from the alleged transactions involved in the" retail-products class action.  77 F.3d at 1360.  Rather, "[t]he only similarity between" the two classes was that they both alleged violations of Alabama statutory law; "[s]uch commonality on its face [was] insufficient for joinder."  77 F.3d at 1360.  The Eleventh Circuit agreed and explained:

> Although certain putative class representatives may have colorable claims against resident defendants in the putative "automobile" class, these resident defendants have no real connection with the controversy involving [the retail-products plaintiffs and] Lowe's in the putative "merchant" class action.  We hold that the district court did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder.  We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder.

77 F.3d at 1360.

The procedural misjoinder doctrine's reach outside the Eleventh Circuit is unclear.  The Tenth Circuit recently described the doctrine's status as follows: "It appears that the Fifth Circuit may also accept procedural misjoinder.  No circuit has rejected the doctrine, but the district courts and the commentators are split."  Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x at 739 (citing, for the proposition that the Fifth Circuit accepts the doctrine, Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d at 532-33; In re Benjamin Moore & Co., 309 F.3d 296, 298 (5th Cir. 2002)).  While the Tenth Circuit recognized that "[t]here may be many good reasons to adopt procedural misjoinder," it declined to adopt the doctrine, because it would not have changed the result in that case.  Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x at 739.  See 14B Charles A. Wright & Arthur Miller, Federal Practice & Procedure § 3723, at 867-77 & n.122 (3d ed. 2009)(confirming the developing doctrine's unclear status).  The Court, however, has adopted the doctrine and applied it in two cases, although it concluded in both cases that no procedural misjoinder occurred, and both cases thus resulted in remand.  See Ullman v. Safeway Ins. Co., 995 F. Supp. 2d 1196 (D.N.M. 2013)(Browning, J.); Flores-Duenas v. Briones, 2013 WL 6503537.

**5.** **The "Bad Faith" Exception to the One-Year Removal Bar for Diversity Cases.**

Since 1988, 28 U.S.C. § 1446 has provided that no case that has been pending more than one year in state court can be removed on the basis of diversity jurisdiction.[15]  On January 6, 2012, Congress put into effect the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 760, 762 ("JVCA"), which, among other changes, added a bad-faith exception to the one-year limitation.  As a result, the current subsection (c) is almost entirely new; it reads as follows, with the sole sentence of the statute that pre-exists the JVCA underlined:

> **Requirements; removal based on diversity of citizenship.** --
>
> **(1)** A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.
>
> **(2)** If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that --

---

[15]The one-year limitation applies only to standard diversity jurisdiction under 28 U.S.C. § 1332(a) and not to class actions removed under § 1332(d), which is a part of the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4-14 ("CAFA").  Although exempting CAFA from the one-year limitation appears to defy the § 1446(c)(1)'s text, which refers to cases brought "on the basis of jurisdiction conferred by section 1332," another section of Title 28 clarifies the issue:

> A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants.

28 U.S.C. § 1453(b) (emphasis added).  See Reece v. Bank of N.Y. Mellon, 760 F.3d 771, 775-76 (8th Cir. 2014).

      **(A)**    the notice of removal may assert the amount in controversy if the initial pleading seeks --

            **(i)**    nonmonetary relief; or

            **(ii)**    a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

      **(B)**    removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

**(3)**    **(A)**    If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under subsection (b)(3).[16]

      **(B)**    If the notice of removal is filed more than 1 year after commencement of the action and the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith under paragraph (1).

28 U.S.C. § 1446(c) (boldface in original)(underscoring added to show pre-JVCA content).

---

[16]Subsection (b)(3) provides:

Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3).   The combination of subsection (c)(3)(A)'s new provisions and subsection (b)(3)'s pre-JVCA provisions means that the defendant's thirty-day clock to remove a case starts whenever they have sufficient information -- obtained from anywhere in the case, and not merely from the pleadings or settlement communications -- to conclude that the case meets the amount-in-controversy requirement.

A plaintiff's "bad faith" can manifest itself in either of the two requirements for diversity jurisdiction: (i) a plaintiff can name or retain nondiverse parties or forum-citizen defendants to defeat complete diversity or the forum-defendant rule, respectively; or (ii) it can obfuscate the quantity of damages it seeks for the purpose of defeating the amount-in-controversy requirement.[17]   It is clear how the Court should construe (ii) -- the Tenth Circuit's opinion in McPhail v. Deere & Co. has already fleshed out a detailed framework for analyzing the amount-in-controversy requirement, and the JVCA's legislative history indicates that, far from abrogating McPhail v. Deere & Co., Congress intended section 1446(c)'s amount-in-controversy provisions to codify the approach that the Seventh Circuit chartered in Meridian Securities Insurance Co. v. Sadowski and that the Tenth Circuit advanced in McPhail v. Deere & Co., see Report to the Committee on the Judiciary of the United States House of Representatives § 103, at 15-16, H.R. 112-10 (2011)(citing only two cases under the heading "Amount in controversy and removal timing," McPhail v. Deere & Co. and Meridian Securities Insurance Co. v. Sadowski, and stating that the JVCA's amendments "follow the lead of [those] cases" (emphasis

---

[17]As previously explained, it was unclear before the JVCA's passage whether the common-law doctrine of fraudulent joinder creates an exception to the forum-defendant rule or just to complete diversity.   See Law Regarding Removal, Remand, Fraudulent Joinder, Procedural Misjoinder, and Bad Faith Part 3, supra, at 42-43.  The bad-faith exception, however, is statutory, and the statute applies to all cases in which "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).  The statute's plain meaning thus includes both the bad-faith joinder of a nondiverse party -- which defeats removal jurisdiction by defeating original diversity jurisdiction -- and the bad-faith joinder of a forum-citizen defendant -- which only defeats removal jurisdiction.  Moreover, as the Court is largely writing on a blank slate in interpreting the bad-faith exception, it sees no reason to read in a nonsensical double standard.

omitted)).[18]  On the other hand, § 1446(c)'s text says nothing at all about (i), nor has any court

attempted to comprehensively define it.  The JVCA's legislative history gives the Court some

---

[18]The JVCA's legislative history provides:

Section 103(b)(3)(C) of the bill further amends subsection 1446(c) by inserting two new paragraphs, (2) and (3), to address issues relating to uncertainty of the amount in controversy when removal is sought, e.g., when state practice either does not require or permit the plaintiff to assert a sum claimed or allows the plaintiff to recover more than an amount asserted.  Although current practice allows defendants to claim that the jurisdictional amount is satisfied and remove, several issues complicate this practice.

First, circuits have adopted differing standards governing the burden of showing that the amount in controversy is satisfied.  The ''sum claimed'' and ''legal certainty'' standards that govern the amount in controversy requirement when a plaintiff originally files in Federal court have not translated well to removal, where the plaintiff often may not have been permitted to assert in state court a sum claimed or, if asserted, may not be bound by it.  Second, many defendants faced with uncertainty regarding the amount in controversy remove immediately -- rather than waiting until future developments provide needed clarification -- out of a concern that waiting and removing later will result in the removal's being deemed untimely.  In these cases, Federal judges often have difficulty ascertaining the true amount in controversy, particularly when removal is sought before discovery occurs.  As a result, judicial resources may be wasted and the proceedings delayed when little or no objective information accompanies the notice to remove.

Proposed new paragraph 1446(c)(2) allows a defendant to assert an amount in controversy in the notice of removal if the initial pleading seeks non-monetary relief or a money judgment, in instances where the state practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded.  The removal will succeed if the district court finds by a preponderance of the evidence that the amount in controversy exceeds the amount specified in 28 U.S.C. § 1332(a), presently $75,000.

If the defendant lacks information with which to remove within the 30 days after the commencement of the action, the bill adds a new subparagraph 1446(c)(3)(A) to clarify that the defendant's right to take discovery in the state court can be used to help determine the amount in controversy.  If a statement appears in response to discovery or information appears in the record of the state proceedings indicating that the amount in controversy exceeds the threshold amount, then proposed subparagraph 1446(c)(3)(A) deems it to be an ''other paper'' within the meaning of paragraph 1446(b)(3), thereby triggering a 30-day

clue as to the exception's basic nature, but, in answering this question -- what constitutes "bad faith" vis-à-vis improperly joining, or keeping joined, nondiverse parties or forum-citizen defendants -- the Court will have to stake out its own definition.

In <u>Aguayo v. AMCO Ins. Co.</u>, No. CIV 14-0400 JB/KBM, 2014 WL 5859098 (D.N.M. Oct. 31, 2014)(Browning, J.), the Court became the first federal court in the nation to

---

period in which to remove the action. The district court must still find by a preponderance of the evidence that the jurisdictional threshold has been met.

In adopting the preponderance standard, new paragraph 1446(c)(2) would follow the lead of recent cases. <u>See</u> <u>McPhail v. Deere & Co.</u>, 529 F.3d 947 (10th Cir. 2008); <u>Meridian Security Ins. Co. v. Sadowski</u>, 441 F.3d 536 (7th Cir. 2006). As those cases recognize, defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met. Discovery may be taken with regard to that question. In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies. If the defendant establishes by a preponderance of the evidence that the amount exceeds $75,000, the defendant, as proponent of Federal jurisdiction, will have met the burden of establishing jurisdictional facts.

Under proposed subparagraph 1446(c)(3)(B), if the notice of removal is filed more than one year after the commencement of the action, and a finding is made that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding would be deemed bad faith under paragraph (1).

Section 103(b)(4)(A) of the bill inserts a heading for subsection 1446(d). Section 103(b)(4)(B) makes a technical amendment replacing ''thirty'' with ''30'' each place it appears in section 1446. Section 103(b)(4)(C) strikes current subsection (e) (a criminal removal provision, which is now codified as part of new section 1454). Section 103(b)(4)(D) redesignates current subsection (f) as new subsection (e), and inserts a new heading.

<u>Report to the Committee on the Judiciary of the United States House of Representatives</u> § 103, at 15, H.R. 112-10 (2011).

District courts in other Circuits may need to grapple with the extent to which the JVCA codifies the <u>McPhail v. Deere & Co.</u> approach. The Court, however, is in the Tenth Circuit, and <u>McPhail v. Deere & Co.</u> binds it unless intervening statute or Supreme Court case law invalidates the holding. The JVCA's legislative history makes it clear that <u>McPhail v. Deere & Co.</u> remains intact.

comprehensively construe the new § 1446(c).  The Court concluded that the bad-faith exception sets forth a two-step standard.  First, the Court must inquire whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera.  Failure to actively litigate against the removal spoiler will be deemed bad faith; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith.  Second, the defendant may attempt to rebut this presumption with evidence already in the defendant's possession which establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court.  The defendant may introduce direct evidence of the plaintiff's bad faith at this stage -- e.g., electronic mail transmissions in which the plaintiff states that he or she is only keeping the removal spoiler joined to defeat removal -- but will not receive discovery or an evidentiary hearing in federal court to obtain such evidence.

## ANALYSIS

The Court doubts that it has original jurisdiction over this case, because the case does not appear to be completely diverse or to present a federal question; the Court will thus order the parties to provide an evidentiary basis for the Court's original jurisdiction within the next seven days, if they wish to keep this case in federal court.  If the Court has original jurisdiction, however, Lebreton's noncompliance with the thirty-day limitation on removal, the one-year limitation on removal, and the forum-defendant rule do not strip the Court of jurisdiction.  These three removal defects are all procedural, rather than jurisdictional, and Bank of America has waived all of them by letting thirty days go by without moving to remand.  The Court will grant

the MTD, because Lebreton's Counter Claim is improperly pled, but it will dismiss the Counter

Claim without prejudice to Lebreton seeking leave to amend her Answer and reassert the

counterclaim.  The Court will deny Lebreton's four motions, because they are motions under rule

12(e) and 12(f), and are directed at the MTD, but those rules are designed to be directed only at

pleadings.

## I.   THE COURT DOES NOT APPEAR TO HAVE ORIGINAL SUBJECT-MATTER JURISDICTION OVER THIS CASE, AND THE PARTIES MUST ESTABLISH THIS JURISDICTION IF THEY WISH TO REMAIN IN FEDERAL COURT.

There are two common bases for federal courts' original subject-matter jurisdiction:

federal-question jurisdiction under 28 U.S.C. § 1331; and complete diversity under 28 U.S.C.

§ 1332.  The Clerk's Office of the District of New Mexico has categorized this case as a federal-

question case, but the Notice of Removal does not specify a jurisdictional basis.  The Clerk's

Office likely based its categorization on the following word soup -- rife with "USC" references --

from the Notice of Removal:

> **Dispositive Material Defects as Points and Authorities.**
>
> 7.   Due to the nature for these proceedings let the stenographic record show the following rule violations;
>
> > (1)   15 USC § 1692- Congressional findings and declaration of purpose
> >
> > > (a)   Abusive practices
> > >
> > > > There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy; and

(2)    Violation of FDCPA 15 USC 1692e(g)(A)- false representation of character amount or legal status of debt; and

(3)    Violation of state consumer protection laws; breach of good faith and fair dealings, unfair and unlawful conduct and unfair trade practice upon the consumer* 15 USC 1692a; and

(4)    Violation of state consumer protection laws; breach of good faith and fair dealings, unfair and unlawful conduct and unfair trade practice upon the consumer* 15 USC 1692a; and

(5)    Violation of 15 USC 1641 -Liability of assignee's; and

(5)    Violation USC 17 (a) Real Party in Interest; and

(6)    Violation 8 USC 1408 Nationals but not citizens.

(7)    Fourteenth Amendment Sec. I. Privileges et. Seq.

(8)    Rule 9(a) Lack of Ratification at Commencement.

(9)    Violation of HPLA where Federal Rules support local rules.

8.    Once removed, the case can be transferred to, or consolidated in, another federal court, despite the plaintiffs original intended venue.

9.    The time is ripe for the court to take advantage of what may be a relevant newly realized opportunity. Simply recognize the NEW MEXICO SUPREME COURT ruling see f2 as the aforementioned Federal Rules may fully incorporate.

Notice of Removal at 2 (typographical irregularities in original). There are myriad defects with the Notice of Removal; for one thing, it very much appears that Lebreton believes that she is the plaintiff in this case. See, e.g., Notice of Removal at 3 ("Plaintiff by and through the estate executrix . . . [seeks] damages for a minimum [of] $450,000 plus penalties, fee's [sic] and for such other relief . . . ." (emphasis in original)).

Regardless of Lebreton's stated basis for removal, there does not appear to be a federal question on the face of Bank of America's well-pleaded Complaint.  Federal counterclaims do not support federal-question jurisdiction.  See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 831 (2002)("[A] counterclaim -- which appears as part of the defendant's answer, not as part of the plaintiff's complaint -- cannot serve as the basis for 'arising under' jurisdiction."  (citations omitted)).  Even if counterclaims could support federal-question jurisdiction, Lebreton's Counter Claim does not appear to raise a federal question.  Even if the Courter Claim did raise a federal question, and that federal question were sufficient to impart jurisdiction on the Court, the Court dismissed the Counter Claim with its earlier Order, filed March 27, 2015 (Doc. 64), to which this Memorandum Opinion serves as an explication.  The parties will likely need to rely instead on diversity jurisdiction, and it appears that Bank of America is doing just that.  Bank of America responded to the Court's jurisdictional inquiries with a letter, in which it stated: "In the instant matter, the original dispute was between completely diverse parties and the amount in controversy requirement is met, therefore this court can exercise original jurisdiction."  Letter at 2.

The Court doubts, however, that complete diversity exists.  For diversity-jurisdiction purposes, there are three parties to this case: Bank of America, the Plaintiff; Lebreton, a Defendant; and MERS, a Defendant.  Defendant FNU LNU, Unknown Tenant (Real Name Unknown), does not impact the diversity analysis, because "in determining whether a civil action is removable on the basis of jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."  28 U.S.C. § 1441(b)(1).  Bank of America must be diverse from both Lebreton and MERS for the Court to have diversity jurisdiction.  Lebreton appears -- from the facts in the Complaint, which state that she owns a

home in Santa Fe -- to be a New Mexico citizen.  Bank of America is not a New Mexico citizen, so diversity exists with respect to her.

The parties run into problems, however, with MERS.  "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated <u>and</u> of the State or foreign state where it has its principal place of business . . . ."  28 U.S.C. § 1332(c)(1).  For many corporations, this rule produces dual citizenship: the corporation is a citizen of its state of incorporation and of the state in which "it has its principle place of business."  The Court pulled Bank of America's most recent Form 10-K,[19] and it states that Bank of America's "principal executive offices" are in North Carolina and its state of incorporation -- like many national corporations' -- is Delaware.  United States Securities and Exchange Commission, Form 10-K for Bank of America, <u>available at</u> http://services.corporate-ir.net/SEC.Enhanced/SecCapsule. aspx?c=71595&fid=9950613.  The Court could not find a 10-K for MERS, but other courts to consider the issue have concluded that MERS has a principal place of business in Virginia and is incorporated in Delaware.  <u>See</u> <u>Vespi v. Mortg. Elec. Reg. Sys., Inc.</u>, No. CIV 12-0858, 2012 WL 7006134, at *2 (W.D. Mich. Dec. 14, 2012)("MERS is a citizen of the States of Delaware and Virginia."); <u>Kalmanson v. Mortg. Elec. Reg. Sys., Inc.</u>, No. CIV 11-0482, 2011 WL 7143121, at *1 (S.D. Ohio Dec. 23, 2011)("MERS is a corporation incorporated in Delaware with its principal place of business in Virginia."); <u>Ganesan v. GMAC Mortg., LLC,</u> , at *1 (N.D. Cal. Apr. 20, 2011)("Mortgage Electronic Registration Systems, Inc. ('MERS') is . . . a

---

[19]A form 10-K is "[a] financial report filed annually with the SEC by a registered corporation.  The report typically includes an audited financial statement, a description of the corporation's business and financial condition, and summaries of other financial data."  <u>Black's Law Dictionary</u> 1607 (9th ed. 2009).

citizen . . . of the State of Delaware, where MERS was and is organized as a corporation, and the State of Virginia, where MERS had and has its principal place of business.").

It thus seems that Delaware's popularity as a place of incorporation has some downsides for national corporations hoping to fight their court battles in federal fora.  If things are as they seem to be, and both Bank of America and MERS are both Delaware citizens, then the Court must remand this case.[20]  Original jurisdiction is, obviously, jurisdictional, and neither Bank of America's waiver nor all parties' consent suffices to replace it.  The Court will give the parties seven days[21] to establish a basis for original subject-matter jurisdiction, and, if no party can do so, the Court will remand this case to state court.

---

[20]Some of Bank of America's phrasing in its Letter suggests that it may believe that diversity jurisdiction can exist despite a lack of contemporaneous complete diversity: "In the instant matter, the original dispute was between completely diverse parties and the amount in controversy requirement is met, therefore this court can exercise original jurisdiction."  Letter at 2 (emphasis added).  If Bank of America is advancing the proposition that complete diversity need not exist now, so long as it once did, then it is mistaken.  "It is well established that when diversity of citizenship is the basis for removal jurisdiction, it must exist both at the time the original action is filed in state court and at the time removal is sought."  Farm Bureau Mut. Ins. Co., Inc. v. Eighmy, 849 F. Supp. 40, 42 (D. Kan. 1994).  Complete diversity must be ongoing throughout the duration of the controversy for the Court to maintain jurisdiction; if complete diversity is destroyed at any point during the case, the Court relinquishes its jurisdiction and must either dismiss the case or remand it, depending upon whether the case was filed in federal court in the first instance or removed from state court.  See 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.").

[21]Under rule 6(a)(1)'s time-computation standards, the parties' seven days expires on Monday, April 27, 2015.  The parties must file whatever evidence they wish the Court to consider in support of its original federal subject-matter jurisdiction by 11:59 p.m. (MDT) that night.  See Fed. R. Civ. P. 6(a)(4)(A).

II.   **IF THE COURT HAS ORIGINAL JURISDICTION, THEN THE COURT NEED NOT REMAND THIS CASE SUA SPONTE, BECAUSE THE THIRTY-DAY LIMITATION, THE ONE-YEAR LIMITATION, AND THE FORUM-DEFENDANT RULE ARE ALL PROCEDURAL -- NOT JURISDICTIONAL -- AND, THUS, BANK OF AMERICA MAY WAIVE THEM.**

Lebreton's noncompliance with the removal statutes does not deprive the Court of subject-matter jurisdiction; Bank of America could have timely moved for remand if it had wanted, and the Court would have granted the motion, but, because it did not, the matter is waived. The Court will examine the three defects in Lebreton's removal in turn and conclude that none of them are jurisdictional.

A.    **THE THIRTY-DAY LIMITATION IS PROCEDURAL.**

Section 1446(b) requires defendants to remove actions within thirty days of them being filed in state court, or, if federal jurisdiction does not exist at the outset of a case but arises later -- through the addition of federal claims or the voluntary dismissal of all nondiverse parties -- then the defendants must remove the action within thirty days of whenever the basis for federal jurisdiction arose. This rule, however, is well-established to be procedural -- and not jurisdictional -- and, thus, plaintiffs may waive defendants' noncompliance with it. See Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 16-17 (1951); Mackay v. Uinta Dev. Co., 229 U.S. 173, 175 (1913); Universal Truck & Equip. Co., Inc. v. Southworth-Milton, Inc., 765 F.3d 103, 109 (1st Cir. 2014)("Although the defendants failed to remove this lawsuit due to fraudulent joinder in a timely manner, the defendants' misstep was statutory, not jurisdictional."); Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1212 (9th Cir. 1980)("Although the time limit is mandatory and a timely objection to a late petition will defeat removal, a party may waive the defect or be estopped from objecting to the untimeliness by sitting on his rights."). By not moving for

remand, Bank of America waives its right to have the case remanded; the Court's jurisdiction is not implicated.

## B.   THE ONE-YEAR LIMITATION IS PROCEDURAL.

Section 1446(c)(1) provides that "[a] case may not be removed . . . on the basis of [diversity] jurisdiction . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). Until 2012, there was a lively dispute among the federal courts about whether the one-year limitation was procedural or jurisdictional; Congress, however, resolved that question with the passage of the Jurisdiction and Venue Clarification Act, Pub. L. No. 112-63, 125 Stat. 760, 762 ("JVCA"). The JVCA added a bad-faith exception to the one-year limitation -- the portion of § 1446(c)(1), which is quoted at the beginning of this paragraph, from "unless" onward -- and, in doing so, adopted the United States Court of Appeals for the Fifth Circuit's holding that the one-year limitation is procedural:

> Before Congress added the bad-faith exception, the Courts of Appeals were split whether the one-year limitation was jurisdictional or procedural. The primary significance of this distinction involved whether the limitation could be waived: if it is jurisdictional, then an action removed after one year in state court would be outside the federal court's jurisdiction and must be remanded; if it is procedural, then a plaintiff could waive the limitation and elect to stay in federal court. Most Courts of Appeals to conclude that the one-year limitation was procedural limited the consequences of that holding to situations where the plaintiff failed to timely move to remand after the defendant's post-one-year removal. The Fifth Circuit went a step further, reasoning that a party's inequitable conduct could constitute a pseudo-waiver just as easily as his or her consent could. . . .
>
> [In Tedford v. Waner-Lambert Co., 327 F.3d 423 (5th Cir. 2003) ("Tedford"), t]he Fifth Circuit, in an opinion that the Honorable Thomas M. Reavley, United States Circuit Judge, authored and in which the Honorable E. Grady Jolly and Edith H. Jones, United States Circuit Judges, joined, affirmed the district court's application of an "equitable exception" to the one-year limitation. 327 F.3d at 426-28. The opinion's reasoning was sparse, and it focused exclusively on whether the one-year limitation should be subject to an equitable

exception and not on what the exception should entail.  The opinion did not define the exception's scope or suggest relevant factors to its application.

The Fifth Circuit remained the only Circuit to endorse the equitable exception, and only three district courts outside the Fifth Circuit applied the exception and refused to remand a case on bad-faith grounds.  See Lafazia v. Ecolab, Inc., No. 06-0491 ML, 2006 WL 3613771 (D.R.I. Dec. 11, 2006); Rauch v. Rauch, 446 F. Supp. 2d 432 (D.S.C. 2006); In re Rezulin Prods. Liab. Litig., MDL No. 1348, 2003 WL 21355201 (S.D.N.Y. June 4, 2003).  Thirteen district court opinions within the Fifth Circuit denied remand on bad-faith grounds, but none of those appear to set forth a detailed framework for applying the exception. The Fifth Circuit has not come back to the so-called Tedford exception, either before or after the JVCA's passage.  One of the few common features that the Court has identified in surveying the body of Fifth Circuit district court case law applying the Tedford exception is that the courts have viewed it as significant -- cutting strongly in favor of finding bad faith -- when a plaintiff dismisses a removal spoiler without ever taking discovery from him or her.

Nonetheless, Congress passed the JVCA in 2011, clarifying that the one-year limitation is procedural and creating a bad-faith exception modeled after the Tedford exception.  The legislative history indicates Congress' intent:

> New paragraph 1446(c)(1) adds to the current 1-year limitation on removal of diversity actions a limited exception, authorizing district courts to permit removal after the 1-year period if the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.
>
> In 1988, Congress amended this statute to prohibit the removal of diversity cases more than one year after their commencement.  This change was intended to encourage prompt determination of issues of removal in diversity proceedings, and it sought to avoid the disruption of state court proceedings that might occur when changes in the case made it subject to removal.  The change, however, led some plaintiffs to adopt removal-defeating strategies designed to keep the case in state court until after the 1-year deadline passed.  In those situations, some courts have viewed the 1-year time limit as ''jurisdictional'' and therefore an absolute limit on the district court's jurisdiction.  Other courts have viewed the period as ''procedural'' and therefore subject to equitable tolling (e.g., Tedford v. Warner-Lambert Co., 327 F.3d 423 (5th Cir. 2003)).  In light of some ambiguity in the case law (compare Bowles v. Russell, 551 U.S. 205 (2007)(rejecting equitable tolling) with Holland v. Florida, 130 S. Ct. 2549 (2010)(accepting such tolling)), inclusion of statutory language to resolve the conflict is appropriate.

> Proposed paragraph 1446(c)(1) grants district court judges discretion to allow removal after the 1-year limit if they find that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.  The inclusion in the new standard of the phrase ''in order to prevent a defendant from removing the action'' makes clear that the exception to the bar of removal after one year is limited in scope.

> Report to the Committee on the Judiciary of the United States House of Representatives § 103, at 15, H.R. 112-10 (2011).  The other cases cited, besides Tedford, have nothing to do with removal; they are cases in which the Supreme Court discussed equitable tolling of different statutory time periods.

> The legislative history establishes that Congress intended to spread the Fifth Circuit's emerging Tedford doctrine across all twelve Courts of Appeals, rather than codify or expand fraudulent joinder, abrogate the voluntary-involuntary rule, or advance any other end that the text, read in isolation, could be construed to further.

Aguayo v. AMCO Ins. Co., No. CIV 14-0400 JB/KBM, 2014 WL 5859098, at *37-40 (D.N.M. Oct. 31, 2014)(Browning, J.)(citations omitted).  The one-year limitation is thus procedural, and Lebreton's noncompliance with it does not deprive the Court of jurisdiction.

## C.      THE FORUM-DEFENDANT RULE IS PROCEDURAL.

Section 1441(b)(2) contains the forum-defendant rule, which provides that a defendant may not remove an action from state court to federal court if the defendant is a citizen of the forum state.  This rule adds an additional layer to the normal requirements of diversity, because the complete-diversity rule allows for filing in federal court whether (i) an in-state plaintiff sues an out-of-state defendant; (ii) an out-of-state plaintiff sues and in-state defendant; or (iii) an out-of-state plaintiff from one state sues an out-of-state defendant from a different state.  The forum-defendant rule takes option (ii) off the table for removal purposes; an out-of-state plaintiff may sue an in-state defendant in federal court, but, if the plaintiff chooses instead to file in state court, the defendant may not remove it.  The forum-defendant rule presumably exists to honor the

traditional rationale given for federal diversity jurisdiction, which is that state courts might be prone to favor their own residents over outsiders -- a justification which has little sensible application to situations where the outsider is the one choosing the state forum and the insider is the one trying to remove.[22]  See Aguayo v. AMCO Ins. Co., 2014 WL 5859098, at *35 ("The common understanding is that the Framers included diversity jurisdiction in the Constitution to counter insular state courts' prejudice against out-of-state defendants."  (citing Bank of U.S. v. Deveaux, 9 U.S. (5 Cranch) 61, 87 (1809)(Marshall, C.J.))).

There is no published case from the Tenth Circuit stating that the forum-defendant rule is procedural, but there is an unpublished decision directly on point, which states: "[T]he forum-defendant rule is not jurisdictional and may therefore be waived."  Brazell v. Waite, 525 F. App'x at 884 (10th Cir. 2013)(Anderson, J., joined by Baldock & Lucero, JJ.).  The United States Courts of Appeals for the Second, Third, Fifth, Sixth, Seventh, and Eleventh Circuits have all held that the forum-defendant rule is procedural, see Hurley v. Motor Coach Indus. Inc., 222 F.3d 377, 379 (7th Cir. 2000); Snapper, Inc. v. Redan, 171 F.3d 1249, 1258 (11th Cir. 1999); Korea Exch. Bank v. Trackwise Sales Corp., 66 F.3d 46, 50 (3d Cir. 1995); In re Shell Oil Co., 932 F.2d 1518, 1522 (5th Cir. 1991); Farm Constr. Serv. v. Fudge, 831 F.2d 18, 21-22 (1st Cir. 1987); Woodward v. D.H. Overmyer Co., 428 F.2d 880, 882 (2d Cir. 1970); Handley-Mack Co. v. Godchaux Sugar Co., 2 F.2d 435, 437 (6th Cir. 1924), while only the United States Court of Appeals for the Eighth Circuit has held that the rule is jurisdictional, see Horton v. Conklin, 431 F.3d 602, 605 (8th Cir. 2005).  It also appears that every district court in the Tenth Circuit to have addressed this question has concluded that the rule is procedural.  See Lone Mountain

---

[22]That the forum-defendant rule is tied to the traditional justification for federal diversity jurisdiction seems even more likely given that the rule obtains only in diversity cases and not in federal-question cases.

Ranch, LLC v. Santa Fe Gold Corp., 988 F. Supp. 2d 1263, 1265 n.1 (D.N.M. 2013)(Johnson, J.); Schubert v. Genzyme Corp., No. CIV 12-0587 DAK, 2012 WL 3292940, at *2 (D. Utah Aug. 10, 2012)(Kimball, J.); Durbin v. Yellow Transp., 624 F. Supp. 2d 1303, 1304 (D. Kan. 2009)(Murguia, J.); Green v. Chetpatananont, No. CIV 05-0317 HE, 2005 WL 1503438, at *1 (W.D. Okla. June 24, 2005)(Heaton, J.). The Ninth Circuit gave what is likely the best analysis[23] of the question:

> The purpose of the forum defendant rule . . . supports treating it as a non-jurisdictional requirement. Removal based on diversity jurisdiction is intended to protect out-of-state defendants from possible prejudices in state court. See Tosco Corp. v. Cmtys. for a Better Env't, 236 F.3d 495, 502 (9th Cir. 2001)("The purpose of diversity jurisdiction is to provide a federal forum for out-of-state litigants where they are free from prejudice in favor of a local litigant." (internal quotations marks omitted)). The need for such protection is absent, however, in cases where the defendant is a citizen of the state in which the case is brought. Within this contextual framework, the forum defendant rule allows the plaintiff to regain some control over forum selection by requesting that the case be remanded to state court. A procedural characterization of this rule honors this purpose because the plaintiff can either move to remand the case to state court within the 30-day time limit, or allow the case to remain in federal court by doing nothing. Either way, the plaintiff exercises control over the forum. Although a jurisdictional reading of the rule preserves the plaintiff's right to remand beyond the 30-day limit, it also allows the court to remand *sua sponte*, even if the plaintiff prefers to remain in federal court.

Lively v. Wild Oats Markets, Inc., 456 F.3d 933, 940 (9th Cir. 2006). The Court agrees with this analysis.[24] Also, to the extent that the Court is ambivalent on the issue, that the overwhelming

---

[23]The Ninth Circuit's case is also the lone case that the Tenth Circuit cited in support of its statement -- in an unpublished case -- that the forum-defendant rule is procedural. See Brazell v. Waite, 525 F. App'x at 884.

[24]The Court additionally notes that, despite the common use of the phrase "removal jurisdiction," the Court is unaware of any removal-specific barriers to a federal forum -- i.e., rules that would prevent a case that could be originally filed in federal from being removed to federal court -- that are jurisdictional. The thirty-day limitation, the one-year limitation, the forum-defendant rule are all -- as this opinion concludes -- procedural.

This result is perhaps not coincidental. Jurisdiction is about circumscribing the outer reaches of a court's power to hear a case or controversy, and, thus, any given case or controversy

majority of courts have concluded that the forum-defendant rule is procedural itself weighs in

favor of adopting that approach -- after all, a law of questionable correctness that is clear,

---

should either be within the court's jurisdiction or outside of it.  When a case satisfies the requirements of original federal subject-matter jurisdiction, the court has jurisdiction over that case, i.e., the court can hear the case.  Whether that court will be the court to actually hear the case depends upon three procedural matters: (i) whether the plaintiff elects to file in federal court, in which case further rules are sidestepped completely; and if not, (ii) whether the defendant elects to remove the case; and if so, (iii) whether the removal-specific requirements are met, such that the defendant's choice of forum should override the plaintiff's.  This situation differs from, for example, a court losing jurisdiction over a case after a nondiverse party is joined under 28 U.S.C. § 1447(e).  The joinder or removal of a party -- or the joinder or removal of claims, which is more relevant to the federal-question context -- alters the dimensions of the constitutional case or controversy; choosing to file a given case or controversy in one forum over another, however, does not alter its dimensions.  Some support for this conception of jurisdiction can be seen in an early Supreme Court case on the matter:

> There are cases which uphold judgments in the district courts even though there was no right to removal.  In those cases the federal trial court would have had original jurisdiction of the controversy had it been brought in the federal court in the posture it had at the time of the actual trial of the cause or of the entry of the judgment.  That is, if the litigation had been initiated in the federal court on the issues and between the parties that comprised the case at the time of trial or judgment, the federal court would have had cognizance of the case.  This circumstance was relied upon as the foundation of the holdings.  The defendant who had removed the action was held to be estopped from protesting that there was no right to removal.  Since the federal court could have had jurisdiction originally, the estoppel did not endow it with a jurisdiction it could not possess.

> In this case, however, the District Court would not have had original jurisdiction of the suit, as first stated in the complaint, because of the presence on each side of a citizen of Texas.  The posture of this case even at the time of judgment also barred federal jurisdiction.  A Texas citizen was and remained a party defendant.

> The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation or by  prior action or consent of the parties.  To permit a federal trial court to enter a judgment in a case removed without right from a state court where the federal court could not have original jurisdiction of the suit even in the posture it had at the time of judgment, would by the act of the parties work a wrongful extension of federal jurisdiction and give district courts power the Congress has denied them.

Am. Fire & Cas. Co. v. Finn, 341 U.S. at 541-42 (1951)(footnotes omitted)(citation omitted).

predictable, and consistently applied is superior to a law of questionable correctness that is unclear, unpredictable, and inconsistently applied.

The Court concludes that the thirty-day limitation, the one-year limitation, and the forum-defendant rule are all procedural bars on removal -- not jurisdictional ones.  As Bank of America has not moved to remand this case, it has waived Lebreton's noncompliance with them.  If the Court has subject-matter jurisdiction over this case in the first instance -- which remains an open question that Bank of American must answer -- then Lebreton's faulty removal does not strip the Court of that jurisdiction.

## III.   THE COURT WILL DISMISS THE COUNTER CLAIM WITHOUT PREJUDICE, BECAUSE LEBRETON IMPROPERLY PLED IT.

The Court will dismiss Lebreton's Counter Claim without prejudice, because the Court cannot discern what it is.  Lebreton may formulate a clarified version of her Counter Claim and seek leave to reassert it at a later time.  There may ultimately be numerous substantive problems with the Counter Claim -- such as untimeliness, failure to state a claim, or being limitations barred -- which Lebreton may not be able to fix.  At the present time, however, the Court cannot fully understand what the Counter Claim is about -- i.e., what claim it asserts, what legal rights it seeks to vindicate, and what factual predicates it alleges -- and the Court will therefore dismiss it without prejudice.[25]  Lebreton is proceeding pro se, and the Court thus liberally construes her pleadings, but the Counter Claim fails even the pre-Twombly/Iqbal pleading standard: it simply does not put Bank of America -- or the Court, for that matter -- on notice of why Lebreton is

_____

[25]The Court is not even sure what effect a dismissal with prejudice would have.  Because the Court cannot identify the legal claim that the Counter Claim alleges, it could not determine whether res judicata should bar a subsequent, properly pled legal claim.  Also, as already noted, the Court suspects that it lacks subject-matter jurisdiction over this case.  If this case is remanded in seven days, a dismissal without prejudice puts the state court that receives the case in an easier position than one with prejudice would.

suing it.  Rule 8 requires that a counterclaim "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief [and] a demand for the relief sought."  Fed. R. Civ. P. 8(a)(2), (3).  The Counter Claim is a seven-page-long document comprised -- apparently in its entirety -- of quoted excerpts from other case's judicial opinions.

The Court would prefer to tackle the substantive merits of the Counter Claim -- and to tell Lebreton right here and now whether her Counter Claim can survive, rather than kick the question down the road for her to replead and come back later[26] -- but the Court would have no idea where to start.  The Court cannot even determine whether the Counter Claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," which is necessary to analyze whether its assertion was timely.  Fed. R. Civ. P. 13(a)(1)(A).  To the extent that the Counter Claim appears to advance a recognized legal theory, it is that Bank of America lacks standing.   Given that Bank of America has pled that it owns a security interest in Lebreton's property -- and even provided documentation supporting this fact, although it was not required to do so -- the Court cannot imagine that this theory has much merit.  To the extent that it has merit, it would seem to be a defense -- which she can assert by way of a rule 12(b)(1) motion to dismiss -- rather than a counterclaim.

Lebreton may still be able to assert a counterclaim, but (i) she should orient the drafting of any such counterclaim around the concept of "short and plain"; (ii) she may only allege her

---

[26]The Court feels better about its decision to dismiss the Counter Claim without prejudice given that Lebreton has, subsequent to the briefing and hearing on these motions, retained counsel.  The Court worries about going round and round with a pro se party, i.e., continually dismissing the same claim without prejudice, because the pro se party is unfamiliar with federal pleading rules and does not understand what the Court expects from him or her.  Now that Lebreton is represented, the Court's ruling wipes the slate clean with regard to whatever the underlying counterclaim is that Lebreton seeks to assert -- if there indeed is one.  Lebreton can now work with her attorney to fashion a well-pleaded counterclaim that -- even if it is ultimately dismissed -- can be adjudicated on its merits, or she can elect not to allege a counterclaim.

counterclaim by way of one of the pleadings listed in rule 7(a); (iii) because she has already filed an Answer in state court, she should satisfy requirement (ii) by amending her Answer to include the counterclaim; (iv) she must seek Bank of America's consent to amend her Answer; and (v) if Bank of America refuses to give consent, she must seek the Court's leave, via a rule 15(a)(2) motion, to amend her Answer.  Lebreton filed her Counter Claim as a standalone document, rather than as a part of a pleading under rule 7(a).  Rule 13, the rule that governs cross-claims and counterclaims, makes it clear that they are to be included in pleadings, and not as standalone documents.  See Fed. R. Civ. P. 13(a)(1) (providing that, for compulsory counterclaims, "[a] pleading must state as a counterclaim any claim . . . the pleader has against an opposing party" (emphasis added)); Fed. R. Civ. P. 13(b) (providing that, for permissive counterclaims, "[a] pleading may state as a counterclaim against an opposing party any claim that is not compulsory" (emphasis added)).  Cf. McDaniel v. Loya, No. CIV 14-0511 JB/SCY, 2015 WL 1323506, at *10 & n.10 (D.N.M. Mar. 6, 2015)(Browning, J.)(explaining why cross-claims must be asserted in pleadings).  Rule 7(a) provides what pleadings are available in the federal system, and specifies that its list is exclusive:

> **(a)**   **Pleadings.**   Only these pleadings are allowed:
>
> **(1)**   a complaint;
>
> **(2)**   an answer to a complaint;
>
> **(3)**   an answer to a counterclaim designated as a counterclaim;
>
> **(4)**   an answer to a crossclaim;
>
> **(5)**   a third-party complaint;
>
> **(6)**   an answer to a third-party complaint; and
>
> **(7)**   if the court orders one, a reply to an answer.

Fed. R. Civ. P. 7(a).

To be clear, if this formal defect were the only thing wrong with the Counter Claim, then the Court might not require Lebreton to fix it.  See Fed. R. Civ. P. 81(c)(2) ("After removal, repleading is unnecessary unless the court orders it.").  Because the Counter Claim's content is woefully inadequate, however, the Court will dismiss it, and from here on out, because this case is now in federal court, Lebreton must follow federal procedures.  See Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court.").  These procedures include the rule that counterclaims must be asserted in pleadings.

In sum, because Lebreton has already filed an Answer, the proper manner of asserting a counterclaim is to file a motion under rule 15(a)(2) requesting the Court's leave to amend her answer to add a counterclaim.  Lebreton should also bear in mind that, under rule 7.1(a) of the United States District Court for the District of New Mexico's Local Rules of Civil Procedure, before filing any motion, the movant must meet and confer with all opposing parties to ascertain whether they oppose or consent to the motion.[27]  Finally, before filing any motion in this case, the parties must call the Court's Deputy Clerk and the Court will meet with the parties in a pre-

---

[27]The Court acknowledges that Bank of America failed to comply with local rule 7.1(a)'s meet-and-confer requirement before it filed the MTD.  The Court will not deny the MTD as a sanction for Bank of America's noncompliance, however, because the local rules do not require that sanction, see D.N.M. LR-Civ. 7.1(a) ("Movant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied."  (emphasis added)), and because Bank of America has put forth a reasonable explanation for its noncompliance, see Opposition to Motion to Strike Motion to Dismiss at 3-4, which is that it was operating under the false impression that the New Mexico federal court's meet-and-confer rule mirrors the New Mexico state courts' -- which does not require parties to consult before filing a motion to dismiss, see N.M. R. Civ. P. 1-007.1C(1) ("The movant shall not assume that the nature of the motion obviates the need for concurrence from all parties unless the motion is a . . . motion to dismiss.").  The Court will require all parties to adhere to the federal meet-and-confer rule from now on.

filing conference.[28]   For the time being, however, the Court will dismiss Lebreton's Counter Claim without prejudice.

## IV.   THE COURT WILL NOT REQUIRE BANK OF AMERICA TO PROVIDE LEBRETON WITH A MORE DEFINITE STATEMENT OF ITS MTD, BECAUSE THE MTD IS A MOTION, AND RULE 12(e) APPLIES ONLY TO PLEADINGS.

The Court will deny the Motion for More Definite Statement, because it is directed at a motion, and not at a pleading.  Rule 12(e) provides: "A party may move for a more definite statement of a <u>pleading</u> to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e) (emphasis added).  Rule 7 makes a distinction between "pleadings," which rule 7(a) lists, and "motions and other papers," which rule 7(b) describes.  The Motion for More Definite Statement is directed at the MTD, which is a motion.  Even if it were directed at the Complaint -- which is the only pleading that Bank of America has filed in this case -- it would still be improper, because it would be untimely.  <u>See</u> Fed. R. Civ. P. 12(e) ("The motion must be made before filing a responsive pleading . . . .").  The Court will, therefore, deny the Motion for More Definite Statement.

## V.   THE COURT WILL NOT STRIKE ANY PORTION OF THE MTD, BECAUSE THE MTD IS A MOTION, AND RULE 12(f) APPLIES ONLY TO PLEADINGS.

Lebreton's motions to strike fail for the same reason that her Motion for More Definite Statement does: they are directed at a motion, the MTD, rather than at a pleading.  Rule 12(f) provides that "[t]he court may strike from a <u>pleading</u> an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," but it contains no provision for striking materials

---

[28]All of these instructions presume that the parties will be able to provide the Court with an evidentiary basis for its subject-matter jurisdiction within the next seven days.  If the parties cannot do so, then the Court will remand the case, and the New Mexico Rules of Civil Procedure will once again govern the litigation.

from a motion.  Fed. R. Civ. P. 12(f) (emphasis added).  "Motions, briefs, . . . memoranda, objections, or affidavits may not be attacked by the motion to strike."  <u>Dubrovin v. Ball Corp.</u> <u>Consol. Welfare Ben. Plan for Emps.</u>, 2009 WL 5210498, at *1.  Because Lebreton's motions ask the Court to strike material from the MTD, the Court will deny them.  Furthermore, even if Lebreton had directed the motions at the Complaint -- which is a pleading under rule 7(a) and thus is an appropriate target of a motion to strike -- they would still be improper, because they are untimely.  <u>See</u> Fed. R. Civ. P. 12(f)(2) ("The Court may act . . . on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.").  The Court will, therefore, deny the 1st Motion to Strike and the 2nd Motion to Strike in full, and will deny the 3rd Motion to Strike to the extent that it asks the Court to strike material from the MTD.

## VI.   <u>THE COURT WILL SET A STATUS CONFERENCE.</u>

To the extent that the 3rd Motion to Strike asks the Court to set a status conference in this case, the Court will grant the request.  "The power of district courts to manage their dockets is deeply ingrained in our jurisprudence, and a district court's exercise of that power is reviewed only for abuse of discretion."  <u>Hornsby v. Evans</u>, 328 F. App'x 587, 588 (10th Cir. 2009) (unpublished). <u>See</u>, <u>e.g.</u>, <u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626, 630-31 (1962)(holding that a trial court's power to dismiss for lack of prosecution "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"); <u>United</u> <u>States v. Nicholson</u>, 983 F.2d 983, 988 (10th Cir. 1993)("District courts generally are afforded great discretion regarding trial procedure applications (including control of the docket and

parties), and their decisions are reviewed only for abuse of discretion.").   The Court will set a

status and scheduling conference for 8:30 a.m. on April 16, 2015.

**IT IS ORDERED** that: (i) the Defendant's Motion to Dismiss Pursuant to NMRA 1-

012(A) and Fed. R. Civ. P. 12(b)(6), filed April 25, 2014 (Doc. 4), is granted; (ii) the Verified

Motion for a More Definite Statement and Joinder, filed July 11, 2014 (Doc. 25), is denied;

(iii) the Verified Motion to Strike Defendants [sic] Motion to Dismiss Pursuant to NMRA 1-

012(A) and Fed. R. Civ. P. 12(b)(6) with Memorandum of Objection, filed July 11, 2014

(Doc. 26), is denied; (iv) the Notice of Motion and Verified Motion to Strike Documents 28, 29,

30, 31 BANA's Opposition to Motion to Strike Et Al, Motion to Dismiss for Promissory

Estoppel, Breach of Contract, Unclean Hands, Rule 7 Violations, Lack of First Hand Knowledge,

filed August 11, 2014 (Doc. 32), is denied; (v) the requests in the Notice of Motion and Motion

to Strike Request for Status Conference as Motion for Status Conference, filed August 22, 2014

(Doc. 34), are granted in part and denied in part; (vi) Defendant Lisa Lebreton's Counter Claim,

filed April 3, 2014 (Doc. 1-2 at 8-14), is dismissed without prejudice; (vii) a status conference is

set for 8:30 a.m. on April 16, 2015; and (viii) the parties must submit evidence to the Court

establishing a basis for original subject-matter jurisdiction within the next seven days, or the

Court will remand the case to the First Judicial District Court, County of Santa Fe, State of New

Mexico.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

David A. Ferrance
Albuquerque, New Mexico

--and--

Rachel Chiado
Little & Dranttel, PC
Albuquerque, New Mexico

--and--

Jason C. Bousliman
Lewis Roca Rothgerber LLP
Albuquerque, New Mexico

 *Attorneys for the Plaintiff*

Eric N. Ortiz
Joseph C. Gonzales
Eric Ortiz Law
Albuquerque, New Mexico

 *Attorneys for Defendant Laurence Lisa Lebreton*